CHRISTIAN J. HESS v. ADAMANT MANUFACTURING COMPANY OF
AMERICA.[1]

October 21, 1896.

Nos. 10,111—(31).

| 66 | 79 |
| 68 | 20 |
| 168 | 135 |
| 66 | 79 |
| 70 | 481 |
| 66 | 79 |
| 82 | 196 |
| f82 | 198 |

Summons—Service on Foreign Corporation—Agent or Officer.

Held that, upon the evidence, the court was justified in refusing defendant's motion to set aside the service of the summons on the ground that the person on whom it was served was neither an agent nor officer of the company.

Action by Father for Injuries to Child—G. S. 1894, § 5164 — Constitutionality.

G. S. 1894, § 5164, authorizing a father to bring an action for injuries to his child, is constitutional. The action is for the benefit of the child, and the judgment would be a bar to another action by the child.

Injury to Employé—Vice Principal or Fellow Servant.

Under the evidence, the trial court committed no error prejudicial to the defendant in submitting to the jury the question whether the negligent act of defendant's foreman, which caused the injury complained of, was the act of a vice principal or of a fellow servant.

Same—Assumption of Risk—Requests to Charge.

Certain requests to charge as to the assumption of risk held to have been properly refused, because not justified by the evidence, and also because ambiguous and misleading in their language.

Same—Charge of Court—Laws 1895, c. 173.

Laws 1895, c. 173, being merely declaratory of the common law, it was not prejudicial error to read it to the jury as the law of the case, although the statute was not enacted until after the injury complained of occurred.

Appeal by defendant from a judgment of the district court for Hennepin county, in favor of plaintiff for $7,309.17, including orders by Smith, J., denying a motion to set aside the service of the summons, and denying motions for a new trial and for judgment in favor of defendant. Affirmed.

*Kitchel, Cohen & Shaw* and *John H. Nickell,* for appellant.
*Harrison & Noyes* and *R. E. Noyes,* for respondent.

[1] Reported in 68 N. W. 774.

MITCHELL, J. This action was brought under G. S. 1894, § 5164, by the plaintiff for injuries sustained by his minor son while in the employment of the defendant in its factory in Minneapolis.

The defendant was a foreign corporation, but was carrying on business in this state. The summons and complaint were served on one Root, as its general manager. The defendant appeared specially and for the purposes of the motion only and moved the court to set aside the service, on the ground that Root was not at the time of the service either an officer or agent of the company. After a hearing on affidavits, the motion was denied, to which ruling the defendant duly excepted. Thereupon the defendant answered, and, when the cause was at issue, went to trial on the merits. The trial resulted in a verdict for the plaintiff, and the defendant appealed from the judgment.

1. We do not find it necessary to decide the question (on which there is considerable conflict of authority) whether the defendant, by answering and going to trial on the merits after its motion was denied, waived the defect, if any, in the service. See 2 Enc. Pl. & Prac. tit. "Appearance." After an examination of the affidavits and counter affidavits upon which the motion was heard, we are of opinion that the evidence was such that the court was justified in deciding that the defendant had failed to establish the ground of its motion. It being admitted that the defendant had been carrying on business in this state and that Root was its general manager therein, at least up to a very short time before service was made on him, on November 3, 1894, the burden was on it to show that Root's agency had terminated.

The only original affidavit in support of the motion was that of Root, stating in general terms that on October 9, 1894, the defendant sold out all its business, and thereafter it had no office and did no business in this state, and that he (Root) resigned his offices of vice president and manager of the company on November 1, 1894, and thereafter did no business for the company, and was not an officer of the same. Counter affidavits were interposed, to the effect that, up to and subsequent to the date of service, the business continued the same as before, without any apparent change either as to management or employés or otherwise, and that as late as November 6 Root, as "manager," executed the checks of defendant to employés

in payment of their wages. There were also some facts stated in these affidavits tending somewhat to indicate that the officers and agents of the defendant had in mind putting it in position to evade the service of process in this state. The rebuttal affidavit of Root is mainly confined to an explanation of why he drew checks in the name of the defendant after his agency had, as he alleged, ceased. The substance of this explanation is that the bank account was, for certain reasons of convenience, allowed to remain in the name of the defendant after it had ceased to have any interest in the funds.

In view of all the facts, we think it was incumbent on the defendant to state more specifically the acts and facts by which its business was transferred and Root's agency terminated. In arriving at this conclusion, we have not overlooked counsel's suggestions that no question of apparent, as distinguished from actual, agency, is involved; also, that, if plaintiff deemed Root's affidavits evasive or indefinite, he might have compelled him to submit to oral examination.

2. It is urged that G. S. 1894, § 5164, authorizing the father to maintain an action for the injury of his child, is unconstitutional, because it assumes to transfer a cause of action in favor of the child to the father for his own use. We have repeatedly held that the object and effect of the statute is to enable the father to prosecute the action in his own name for the benefit of the child, and that whatever is recovered belongs to the latter. Gardner v. Kellogg, 23 Minn. 463; Buechner v. Columbia Shoe Co., 60 Minn. 477, 62 N. W. 817; Lathrop v. Schutte, 61 Minn. 196, 63 N. W. 493.

It is further urged that even under this construction the statute does not provide "due process of law," because, the infant not being a party to the suit, and not bound by the judgment, the judgment would be no bar to another suit by the infant for the same cause of action. This conclusion is based on a false premise. The infant is barred by the judgment, and he is a party to the action through his father, as his representative, under the statute. In the case of minors or other wards of the state, who are subjects of guardianship, it is competent for the legislature to provide who shall represent them in bringing actions. There is no doubt that the legislature may provide for statutory guardians bringing such actions, and there is no reason why it may not designate the natural

guardian as the person to do so.   Whether the action shall be brought in the name of the guardian in behalf of the infant, or in the name of the infant by the guardian, is a mere question of practice, subject to the control of the legislature.

3. At the time of the injury complained of, the defendant was engaged in manufacturing adamant plaster, the practical part of the business being under the management and supervision of one O'Brien, as general foreman, whose duty it was to superintend and overlook the machinery and the progress of the work, to see that the machinery was kept in proper working order, to see that the machinery was run and that the men were kept at work, and to direct them what work to do.   He also at times hired and discharged the men.   In short, he was the general foreman in charge of the factory and the employés who worked there.   He employed the plaintiff's son, and assigned to him the duty of attending to the sand elevator used to convey sand from the basement to the third floor.   The construction and operation of this machinery are fully explained by the witness Stebbin, in connection with the drawing Exhibit A, found on page 44 of the paper book.

One of the duties assigned to the boy was, whenever the elevator clogged, to go down into the basement and clear it out, by removing the oversupply of sand from the boot.   On the day in question he had gone down into the basement for that purpose, and, while he was engaged in removing the sand with his hand, O'Brien, on the story above, turned on the power, thereby setting the elevator in motion.   The result was that the boy's arm was caught and crushed in the machinery, rendering amputation necessary.

Two acts of negligence on part of the defendant were charged in the complaint: (1) faulty and dangerous construction of the machinery, in that there was no way provided for cleaning out the boot except by inserting the arm; (2) the careless and negligent starting of the machinery by O'Brien, without first ascertaining whether any one was in the basement engaged in cleaning out the boot.

Aside from a denial of the allegations of negligence, the defense was that the boy was guilty of contributory negligence: first, in cleaning out the boot with his hand, instead of using a scoop for that purpose; and, second, in disobeying orders by going down to clean out the boot without first notifying the foreman, O'Brien.

But it is conceded that, under the evidence, the question of contributory negligence was for the jury, and hence is not involved in this appeal.

Neither is it denied, as we understand it, that the question whether the act of O'Brien in starting the machinery was negligence was also for the jury, the only question as to that act being whether defendant was responsible for it; that is, whether it was the act of a vice principal or a fellow servant. The trial court left it to the jury to determine as a question of fact whether, in turning on the power, O'Brien was acting as a vice principal or as a fellow servant. This ruling is one of the principal errors assigned.

It is not disputed, as we understand counsel, that, as to matters pertaining to his superintendence as foreman, O'Brien represented the defendant; but the claim is that in the particular act of turning on the power he was merely doing the work of a fellow servant. According to his own testimony, it was his duty, as foreman or superintendent, to see that the machinery was kept in proper working order, and, whenever any of it did not operate properly, to look after it and see that it was repaired or put in proper shape. On coming into the factory on the morning in question, he noticed that the power gave out, and it appeared to him that the machinery was going to stop. He says that he thought the best thing to do was to keep the mixers running; so he went over to the elevator clutch, and threw that out, so as to give more power on the mixing. He then went to the engine room and told the engineer that they did not have power enough to run the two mixers that elevated the sand. The engineer answered that they had plenty of power, but that the belt was slipping. He then requested the engineer to put some dressing on the belt, which the engineer did. After attending to some other matters, he says that he thought he would go and see if there was power enough to run the sand machinery along with the rest of the machinery, and for that purpose went and took hold of the clutch, and threw it in, thus turning the power onto the sand elevator. It was at this time that the boy was cleaning out the boot in the basement, and it was this act which caused the injury.

We are of opinion that what O'Brien did on that occasion, both in giving directions as to the machinery and in testing the power,

was all referable to and in performance of his duty of superintend-
ence as foreman, in which he represented the master, and for the
performance of which in such a way as negligently to expose the
employés in the factory to danger the master was liable. At least,
in submitting that question to the jury, the court committed no error
prejudicial to the defendant.

4. The court submitted to the jury both of the alleged acts of neg-
ligence charged in the complaint, and instructed them that if de-
fendant was guilty of negligence in either respect, and such negli-
gence was the proximate cause of the injury, the plaintiff was enti-
tled to recover, unless the boy himself was guilty of contributory neg-
ligence, or had assumed the risks, which last question was also sub-
mitted to the jury to be determined as a question of fact.

The defendant requested the court to charge the jury that: (1)
from the uncontradicted evidence in the case it appeared that the
boy knew the dangers incident to working in and about the elevator
boot in the condition in which it was at the time of his injury; (2)
he assumed the risk of working in and about the elevator boot
in the condition in which it was at the time of his injury. The court
refused to give either of these requests, to which refusals the de-
fendant excepted. The defendant also excepted "to the submission
by the court to the jury of the question of the assumption of risk
by Hess, on the ground that in respect to the assumption of risk there
was nothing in the evidence upon which the jury could pass."

It is urged that the court erred in submitting to the jury the
question whether the boy had assumed the risks incident to the de-
fective and dangerous construction of the machinery, but should
have instructed them, as a matter of law, that he had assumed such
risks. But the question is not saved or raised by the record except
as above. If counsel refer to the risks incident to the mere con-
struction of machinery, considered alone, their contention is prob-
ably correct. But this is a mere theoretical and speculative ques-
tion, of no practical importance in this case. There was no risk or
danger resulting from the mere construction of the machinery stand-
ing by itself. The only risk was that some one might turn on the
power while another person was engaged in cleaning out the boot.
Upon the evidence, neither we nor the trial court would be justi-
fied in holding, as a matter of law, that the boy did appreciate, or in

the exercise of reasonable prudence ought to have fully appreciated, the risk liable to result from such a contingency. No such thing ever had happened before, and it was certainly a question for the jury whether the boy ought, in the exercise of reasonable prudence, to have anticipated that it was liable to happen. This is sufficient to dispose of this question.

But the requests to instruct were properly refused on still another ground. No one would claim that the boy assumed the risk of the defendant or its representative negligently turning the power onto the elevator while he was cleaning out the boot. The requests to charge were so equivocal and ambiguous in their language that they might reasonably have been understood by the jury as meaning that the boy had assumed this risk also. In view of the state of the evidence, the requests were clearly calculated to mislead. The exception to the general charge was subject, in a still greater degree, to the same vice.

5. Defendant's thirteenth request to charge was also properly refused. Under the evidence, the court would not have been justified in charging, as a matter of law, that the boy was guilty of negligence in cleaning out the boot with his hand, even if it might have been done with a scoop. That was a question of fact for the jury.

6. In his charge the court read to the jury, as part of the law applicable to the case, Laws 1895, c. 173, entitled "An act defining the duties of masters and employers to employés in certain cases." This is also assigned as error.

As the act was not passed until after this accident happened it could not, considered as mere statutory law, apply to this case. But an examination of it satisfies us that its provisions are merely declaratory of the common law, and, if so, it can make no difference whether the trial judge delivered the same charge orally, as being the common law, or read it as statutory law. The most that can be said is that some of its provisions, as, for example, as to establishing safe and suitable rules and regulations, had no bearing on this case. But no prejudice could have resulted from this, inasmuch as throughout the charge of the court the attention of the jury was exclusively and expressly confined to the two acts of negligence alleged in the complaint.

Judgment affirmed.

CANTY, J. I concur in all of the foregoing opinion except that portion of it which deals with the manner in which the court below left to the jury the question of whether the negligence of O'Brien, the foreman, in turning on the power and starting the elevator, was the negligence of a fellow servant or that of a vice principal. The court charged the jury as follows:

"If you find that, at the time O'Brien started up the elevator, he was doing it in the discharge of his duty in keeping the machinery in order and suitable to operate, then he was acting as vice principal, and his act in starting up the elevator would be the act of the defendant; and if he was negligent in doing so, under all the circumstances, the defendant would be chargeable with such negligence, and the plaintiff would be entitled to recover, provided the plaintiff did not contribute to the injury by his own negligence."

The court further charged the jury that, if the act of the foreman in starting the elevator was merely the act of a fellow servant, plaintiff cannot recover.

While the part of the charge above quoted is in accord with the later decisions of the majority of this court, so far as it is possible to extract any general rule from those decisions (see Abel v. Butler-Ryan Co., supra, page 16, 68 N. W. 205; Carlson v. Northwestern. Tel. Ex. Co., 63 Minn. 428, 65 N. W. 914; Blomquist v. Chicago, M. &. St. P. R. Co., 60 Minn, 426, 62 N. W. 818), I am still of the opinion that it is not good law. Of course, if the machinery was out of order in the sense that it was out of repair, and the servant was injured by reason of the neglect of the foreman to repair it, his neglect would be that of the master, and such foreman would be a vice principal. But that is not this case. The temporary stoppage of the elevator by reason of the want of power or the slipping of the belt is neither the proximate cause of the injury nor the claim of negligence on which the action is founded; so that the fact that the foreman started up the elevator, "in the discharge of his duty in keeping the machinery in order and suitable to operate," did not, in my opinion, constitute him a vice principal. It is true that such duty may have been a foreman's duty, but, in my opinion, the mere fact that he is foreman, doing a foreman's duty, does not in such a case as this constitute him a vice principal. It requires something more. That something more is the amount of actual disparity which existed between him and the inferior servant as re-

spects the particular danger which caused the injury. In my dissenting opinion in the last case and my concurring opinion in the first two cases above cited, I have quite fully discussed the principle which I think should be applied here. It only remains to apply these principles to this case.

Let us separate the foreman's duties from the fellow servant's in this case. The mere act of pulling the lever and starting the elevator was a fellow servant's duty. But if the foreman knew that at the time in question the plaintiff's son was likely to have his arm in the boot, clearing it out, and that the elevator was about to be started without its being ascertained whether such son was so engaged, and warning him if he was, the foreman would be negligent in performing his duties as foreman if he did not use proper care to see that such son was protected. But, as I have already stated, it requires something more than the mere fact that he is performing a foreman's duties to constitute him a vice principal. That something more is the disparity aforesaid. In my opinion, it should be held as a question of law that such disparity existed in this case. It is disparity of knowledge.

Quoting from my dissenting opinion in the Blomquist case:[2] "Disparity of knowledge is where the foreman has or should have knowledge which the inferior servant neither has nor can be expected to have, the want of which knowledge on the part of such servant causes or contributes to his injury." Said son was down in the basement of the building, with his arm in the boot of the elevator, while the lever which started the elevator was up on the floor above; so that he was absolutely powerless to protect himself against the act of any one starting the elevator. Under these circumstances, it conclusively appears that such disparity existed between the foreman and the inferior servant injured. Then the law should, for such servant's protection, require a higher degree of responsibility on the part of the master; and therefore the foreman should, as to his act of negligence in failing to look out for the safety of such servant, be held to be a vice principal. Then the error of the court in its charge was error without prejudice, and I concur in holding that the judgment appealed from should be affirmed.

[2] 60 Minn. 433.