# CONTINENTAL CONVENTION & SHOW MANAGEMENT, INC. v. AMERICAN BROADCASTING COMPANY AND OTHERS. PAUL F. BEICH CANDY COMPANY, RESPONDENT.[1]

February 10, 1950.

No. 35,066.

---

[1]Reported in 41 N. W. (2d) 263.

*Coursolle, Preus & Maag* and *E. John Abdo,* for appellant.

*Faegre & Benson, Paul J. McGough, Wright W. Brooks,* and *Costigan, Wollrab & Yoder,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from an order granting the motion of defendant Paul F. Beich Candy Company, a foreign corporation, to quash service of process herein, on the ground that Louis Murray, upon whom such service was made for defendant, was not at the time thereof defendant's agent within the state, within the contemplation of M. S. A. 543.08. The motion and order are based upon affidavits submitted in conjunction therewith.

Defendant corporation is organized under the laws of Illinois, with its principal office in Bloomington, Illinois. It does not maintain a warehouse, office, or other specifically designated location here. It is engaged in the confectionery business, and since November 1940 has sold its products in Minnesota and other northwest states through Louis Murray, its salesman, whose territory included Minneapolis.

Throughout his employment, Murray has been the sole representative of defendant in the Minneapolis territory. His work consisted of calling on and selling wholesale jobbers here. His purchase orders were mailed to Bloomington, where they were filled and where the merchandise was shipped by defendant to the customers involved. In addition to selling, at times he made adjustments with customers and gave them credit for losses sustained in connection

with purchases of defendant's products. He did not make collections or deliver merchandise.

In September 1948, plaintiff staged a national food show at the Minneapolis auditorium. In conjunction therewith, defendant sponsored an audience participation radio program. Commencing August 25, 1948, Murray took part in making arrangements with reference thereto on behalf of defendant in Minneapolis. He conferred with plaintiff's president and represented to him that he was to work with the latter on behalf of defendant in promoting defendant's candy and to assist with that part of the radio program which, he stated, was to be sponsored by defendant. He advised plaintiff's president that he was to report to defendant the progress made in connection with such program, to give a resumé of what might be expected, and from time to time to furnish defendant all information with reference thereto. He engaged in several conferences with reference to publicity therefor, and at defendant's expense purchased a quantity of food show tickets and distributed them to defendant's customers, all in accordance with instructions from defendant. The events out of which this litigation arose occurred during such program, but are not otherwise in issue here.

In February 1949, Murray returned to Bloomington because of illness requiring hospital treatment. He informed defendant's sales manager that he could no longer continue his employment, and was advised by defendant's manager that such employment would be officially terminated as of March 1, 1949, but that as a severance allowance he would receive his regular commission on all sales in his territory during the month of March 1949. His unemployment compensation, social security, and income tax payments and deductions were suspended as of March 1, 1949.

He was given permission by his employer to return to Minneapolis to pick up his automobile and while there to call upon old customers and obtain such orders from them as might increase the final amount which would be due him from the month of March.

On March 12 he returned to Minneapolis, and up to and including March 18 called upon his customers, advised them of the termination of his employment, and procured orders from them for defendant's merchandise. On March 16, while in Minneapolis thus engaged, the summons and complaint in this action were served upon him as agent for defendant.

The question for determination here is whether at the time of such service defendant was engaged in business in this state, and whether Murray was its proper agent for the service of process upon it here.

■ M. S. A. 543.08 provides:

"If the defendant be a foreign corporation the summons may be served by delivering a copy to any of its officers or agents within the state, * * *."

Thereunder, in order to maintain an action against a foreign corporation here, it must be established that it is present in the state, and service of process upon it must be made upon its agent, officer, or representative here acting in such capacity, so that notice to him will be deemed notice to the corporation. Atkinson v. United States Operating Co. 129 Minn. 232, 152 N. W. 410; Dahl v. Collette, 202 Minn. 544, 279 N. W. 561.

■ It has been frequently held that the presence here of the representative of a foreign corporation for the sole purpose of soliciting orders will not support a finding that such corporation is present here so as to subject it to the service of process. Lattu v. Ontario & Minnesota Power Co. Ltd. 131 Minn. 162, 154 N. W. 950; Abramovich v. Continental Can Co. Inc. 166 Minn. 151, 207 N. W. 201; Erving v. C. & N. W. Ry. Co. 171 Minn. 87, 214 N. W. 12; Gloeser v. Dollar Steamship Lines, Inc. 192 Minn. 376, 256 N. W. 666; Minnesota Commercial Men's Assn. v. Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. ed. 573.

■ While it is established that an agent's presence here for the solicitation of orders alone is insufficient to establish the presence of a foreign corporation here, the rule "readily yields to slight

additions." Dahl v. Collette, *supra*, where we stated (202 Minn. 550, 551, 279 N. W. 566):

"* * * This is not to say that solicitation, regularly and systematically conducted, within the jurisdiction is without import in deciding whether the corporation is doing business therein. Its simple meaning is that solicitation alone without other corroborating circumstances is not of sufficient strength to sustain the inference that the corporation is present. * * * Solicitation aided by further manifestations of corporate presence no one of which is singly capable of carrying the weight of the inference will warrant the conclusion that it is doing business here."

There, we sustained a finding of corporate presence here based upon these factors, to wit: (1) Regular and systematic solicitation of orders by the agent; (2) substantial volume of products flowing into the state in constant and continuous stream as a result thereof; (3) compromise and adjustment of disputes with customers by the soliciting agent; and (4) maintenance of display and demonstration rooms at conventions attended by present and prospective customers to build up good will.

In the instant case, substantially the same factors are present. There is no conflict in the affidavits regarding the activities of Murray, defendant's agent here, on its behalf. They indicate that he regularly solicited orders for it here; that such solicitation resulted in a continuous flow of its products into the state in a substantial volume; that he made adjustments of disputes with local customers; and that he promoted good will for defendant in making all arrangements for its participation in the national food show at the Minneapolis auditorium. While the latter function was performed on only one occasion, it is persuasive in determining that defendant was present here to an extent that exceeded mere solicitation of orders, and that he was subject to service of process here by service upon the agent involved.

It is contended by defendant, however, that, notwithstanding its status here prior to March 1, 1949, thereafter, because of the

termination of Murray's employment on that date, it no longer could be held to be present here under any circumstances.

We have held that the burden of establishing that a former agency no longer exists at the time of service of process rests upon a defendant foreign corporation asserting such fact. Hess v. Adamant Mfg. Co. 66 Minn. 79, 68 N. W. 774. In the instant case, the affidavits of defendant establish that an agreement was entered into between defendant and Murray, its agent, whereby the latter's contract of employment was to terminate as of March 1, 1949, and that his social security, unemployment compensation, and withholding tax deductions were to be suspended as of that date. It was also agreed at that time, however, that Murray was to return to Minneapolis, to solicit orders, and to receive commissions thereon for the month of March just as he had done prior to March 1, 1949. Pursuant thereto, he returned to Minneapolis and solicited further orders, for which he was compensated. So far as the record discloses, his work after March 1, 1949, was identical with the services he performed prior to that date, and was sufficient to establish defendant's presence in this state on March 16, 1949, the date of the challenged service.

We find support for our conclusion in a number of decisions. In Herndon-Carter Co. v. Norris & Co. 224 U. S. 496, 32 S. Ct. 550, 56 L. ed. 857, the evidence disclosed that one Adams had been the defendant's Kentucky agent for some time prior to 1905, but that on January 1, 1905, defendant had severed the agency relationship. Service of process against defendant in a Kentucky action was made upon Adams as its agent in Kentucky in 1911. Defendant thereupon made a special appearance and objected to the jurisdiction of the Kentucky court. In upholding the service, the United States Supreme Court stated (224 U. S. 503, 32 S. Ct. 553, 56 L. ed. 860):

"* * * We think the testimony clearly shows that the relation of Adams to the defendant company was the same at that time as it had been when the various transactions, to which we have re-

ferred, were taking place in the years 1905 and the following. There could hardly be stronger testimony than the· defendant's own letter of July 7, 1909, in which it is distinctly stated that 'Mr. Adams, who runs our house in Louisville, has a certain interest in the profits,' etc."

In Hess v. Adamant Mfg. Co. *supra*, it was admitted that defendant had been carrying on business here through one Root, its general manager, up to a short time before service was made upon him. Defendant there presented an affidavit to the effect that about a month prior to such service it had sold out its business and thereafter maintained no office and did no business here, and that some two days before such service Root had resigned his office as general manager and did not represent the company at the time of such service. Plaintiff submitted counteraffidavits to the effect that up to and subsequent to the date of service defendant's business here had continued as before without any apparent change as to manager or employes. In upholding such service, this court stated (66 Minn. 81, 68 N. W. 774):

"In view of all the facts, we think it was incumbent on the defendant to state more specifically the acts and facts by which its business was transferred and Root's agency terminated. * * * we have not overlooked counsel's suggestions that no question of apparent, as distinguished from actual, agency, is involved; * * *."

In Meade Fibre Co. v. Varn, 3 F. (2d) 520, service of process was upon one Johnson as defendant's agent in South Carolina. Defendant there asserted that Johnson's authority to act for it had been revoked before the suit was begun and offered certain written agreements in support of this contention. The trial court concluded that, although Johnson had gone through the form of executing the agreements, the actual relationship between him and defendant thereafter was the same as it had been before. In upholding the service there, the court stated (3 F. [2d] 521):

"* * * Each case must depend upon its own facts. The International Harvester Co. v. Kentucky, 234 U. S. 579, 583, 34 S. Ct.

944, 58 L. Ed. 1479. Under those here in evidence, we think that the case before us is ruled by the one last cited, and by such decisions as the Commercial Mutual Accident Co. v. Davis [213 U. S. 245, 29 S. Ct. 445, 53 L. ed. 782], supra, * * *."

In the instant case, on March 16, 1949, the date service was made upon Murray as agent for defendant, he was performing the same functions he had performed for defendant prior to March 1, 1949. For all practical purposes, the arrangement under which he was working at that time was merely an extension of the old agreement, and, as such, continued his agency in fact until March 31, 1949. This being true, it follows that defendant was present here on March 16, 1949, and that at that time Murray was its proper agent for service of process here.

The order of the trial court vacating and setting aside the service on defendant is reversed.