## STATE v. NORTHWESTERN STATES PORTLAND CEMENT COMPANY. *

84 N. W. (2d) 373.

June 14, 1957—No. 36,826.

*Certified to United States Supreme Court September 18, 1957.

*Joseph A. Maun, Mandt Torrison, William R. Busch, Bundlie, Kelley & Maun,* and *Smith & Beck,* for appellant.

*Miles Lord,* Attorney General, *Perry Voldness,* Assistant Attorney General, and *Arthur C. Roemer,* Special Assistant Attorney General, for respondent.

**34**

MATSON, JUSTICE.

Defendant taxpayer, a foreign corporation engaged exclusively in interstate commerce, appeals from a judgment in a proceeding by the State of Minnesota to collect income taxes—together with penalties and interest—upon that portion of the taxpayer's total net income which is allocable to Minnesota. The allocated tax relates to income derived solely from interstate commerce business conducted in this state.[1]

Three questions are presented on appeal:

(1) Does the taxpayer have sufficient contact with the State of Minnesota to make it amenable to service of process and subject to the jurisdiction of the Minnesota courts?

(2) Is M. S. A. 290.03 in conflict with, and thus invalid and void under, the due process clause of U. S. Const. Amend. XIV, and Minn. Const. art. 1, § 7, insofar as it imposes a tax on that portion of the net income of a foreign corporation arising out of sales assignable to and activities conducted within Minnesota?[2]

---

[1]This decision comes to the writer by reassignment.

[2]Section 290.03 reads as follows:

"An annual tax for each taxable year, computed in the manner and at the rates hereinafter provided, is hereby imposed upon the taxable net income for such year of the following classes of taxpayers:

"(1) Domestic and foreign corporations not taxable under section 290.02 which own property within this state or whose business within this state during the taxable year consists exclusively of foreign commerce, interstate commerce, or both;

"Business within the state shall not be deemed to include transportation in interstate or foreign commerce, or both, by means of ships navigating within or through waters which are made international for navigation purposes by any treaty or agreement to which the United States is a party;

"(2) Resident and non-resident individuals, except that no non-resident individual shall be taxed on his income from compensation for labor or personal services within this state during any taxable year unless he shall have been engaged in work within this state for more than 150 working days during such taxable year;

"(3) Estates of decedents, dying domiciled within or without this state; and,

"(4) Trusts (except those taxable as corporations) however created by residents or non-residents or by domestic or foreign corporations."

(3)   Is § 290.03 in conflict with, and thus invalid and void under, the commerce clause, U. S. Const. art. I, § 8, clause 3, insofar as it imposes a tax on that portion allocable to the taxing state of the net income of a foreign corporation whose business within the taxing state consists exclusively of interstate commerce?[3]

Taxpayer is an Iowa corporation engaged in the manufacture and sale of cement; its principal office and place of business is at Mason City, Iowa. Although the taxpayer maintains an office in Minneapolis and employs several representatives within the state who regularly and systematically solicit orders for the taxpayer's product, the taxpayer has never qualified under M. S. A. 303.03 as a foreign corporation authorized to transact business within this state.

Although in the course of its business in interstate commerce the taxpayer has for over 30 years systematically marketed a substantial part of its products in Minnesota, it has never filed income tax returns in this state. On refusal of the taxpayer to file income tax returns for the fiscal years 1933 through 1948 as required under § 290.03, the commissioner of taxation prepared returns on the basis of the best information available to him, filed these returns for the taxpayer, and assessed against the taxpayer the income taxes shown to be due by the returns. In the preparation of the returns, the commissioner used the three-factor formula prescribed by § 290.19 to determine what portion of the taxpayer's total net income should be allocated to Minnesota and subjected to the income tax imposed by this state. The following application of the formula defines each of the three factors and illustrates

---

[3]For convenience in comparing § 290.03 with § 290.02, the latter section is set forth below:

"An annual tax is hereby imposed upon every domestic corporation, except those included within section 290.03, for the privilege of existing as a corporation during any part of its taxable year, and upon every foreign corporation, except those included within section 290.03, for the grant to it of the privilege of transacting or for the actual transaction by it of any local business within this state during any part of its taxable year, in corporate or organized form.

"The tax so imposed shall be measured by such corporations' taxable net income for the taxable year for which the tax is imposed, and computed in the manner and at the rates provided in this chapter."

the result of their employment in determining the portion of the taxpayer's net income allocable to Minnesota for the year ending November 30, 1948:

| | | |
|---|---|---|
| (1) | The ratio of the taxpayer's sales assignable to Minnesota to its total sales for the year wherever made | 48.4493 percent |
| (2) | The ratio of the taxpayer's total tangible property in Minnesota to its total tangible property used in the business that year wherever situated | .1142 percent |
| (3) | The ratio of the taxpayer's total payroll in Minnesota to its total payroll for the entire business | 1.6484 percent |
| | Total | 50.2119 percent |
| | Arithmetical Average | 16.7373 percent |

The percentages for the three factors were added together for a total of 50.2119 percent and then divided by 3 to give the final arithmetical average of 16.7373 percent which represents the percentage of taxpayer's income allocable to Minnesota for the 1948 fiscal year.[4] The average percentage when applied to taxpayer's 1948 total net income of $852,897.74—after first deducting therefrom $12,667.57 for non-apportionable income arising from interest and rents derived from property located outside Minnesota—shows for that year as apportionable to Minnesota a taxable net income of $140,631.84. Upon this latter sum of income, which is allocated to Minnesota pursuant to the three-factor formula, the commissioner assessed a tax of $8,370.53 plus certain penalties and interest. Total taxes, penalties, and interest assessed for the fiscal years 1933 to 1948 are $102,536.82.

---

[4] The 1948 fiscal year represents the year ending November 30, 1948.

## I

WAS TAXPAYER AMENABLE TO JURISDICTION OF MINNESOTA COURT?

■ We turn to the first issue to ascertain whether the taxpayer was juridically present in this state as to be amenable to the jurisdiction of our courts. Whether a foreign corporation domiciled in another state is jurisdictionally present so as to be subject to the jurisdiction of the Minnesota courts depends in each case upon the quality and nature of the activities which it carries on within our state.[5] What activity or combination of activities are necessary to constitute jurisdictional presence[6] of a foreign corporation domiciled elsewhere, in order to comply with the due process clause of Amend. XIV, cannot be summarized so as to provide an arbitrary test for all cases. Each case must be determined on its own peculiar facts to ascertain whether the corporation has carried on activities of such a quality and nature that it can be said that it has, as a matter of due process, established contacts, ties, or relations within the forum which give rise to privileges and obligations which reasonably obligate it to respond to any suit brought within the forum.

■ Whether regular and systematic solicitation of business within the state—which results in a continuous flow of the corporation's products into the state through the channels of interstate commerce—alone and of itself—constitutes jurisdictional presence we need not here determine. It is clear, in any event, however, that such regular and systematic solicitation, when corroborated by other and additional corporate acts or manifestations within the forum, does establish jurisdictional presence in compliance with the requirements of the due process clause. We need not here attempt to define what other

---

[5]See, Schilling v. Roux Distributing Co. Inc. 240 Minn. 71, 59 N. W. (2d) 907; Hartmon v. National Heater Co. 240 Minn. 264, 60 N. W. (2d) 804; Continental C. & S. Management, Inc. v. American Broadcasting Co. 230 Minn. 217, 41 N. W. (2d) 263; Dahl v. Collette, 202 Minn. 544, 279 N. W. 561; Hutchinson v. Chase & Gilbert (2 Cir.) 45 F. (2d) 139.

[6]The symbolic terms *present* and *presence* as applied to a foreign corporation in ascertaining if state courts have jurisdiction have been ably discussed in Hutchinson v. Chase & Gilbert, *supra,* and in Schilling v. Roux Distributing Co. Inc. *supra,* and, therefore, need no discussion here.

acts are sufficient to furnish corroboration since in the present case the corroborative acts are both abundant and jurisdictionally significant. The taxpayer herein not only has regularly and systematically solicited business which has brought through the channels of interstate commerce a continuous flow into this state of its products, but as a further indication of its presence it has systematically carried on many additional activities and services which are summarized in the following four paragraphs.

FACTUAL SUMMARY OF TAXPAYER'S ACTIVITIES IN MINNESOTA

We turn to the facts as found by the trial court and as sustained by the evidence. For the convenience of its salesmen and customers, the taxpayer rents and maintains in Minneapolis an office which is used to some extent as a central office and serves as a clearinghouse for orders and complaints. A full-time secretary is employed in this office; two telephone lines are maintained; and it is listed in both telephone (alphabetical and classified indexes) and city directories. One of the district representatives is in charge of this office and, with the taxpayer's knowledge, holds himself out as district manager. In addition to office equipment, goodwill advertising and other material, taxpayer owns the automobiles driven by its Minnesota salesmen.

Taxpayer employs five sales representatives in Minnesota, two of whom work out of the Minneapolis office. The salesmen regularly and systematically solicit orders from eligible purchasers—building supply dealers, ready-mix operators, and large contractors. In addition, the salesmen regularly and systematically contact potential customers and users of cement products (inclusive of architects and building and road contractors) to induce them to buy from taxpayer's established local outlets and dealers, promote goodwill and furnish advertising materials to customers, entertain customers, and occasionally receive and forward complaints. *The flow of taxpayer's products into Minnesota constitutes about 48 percent of its sales volume.*

All taxpayer's Minnesota employees are hired by supervisory personnel from its Mason City office, and no Minnesota employee has authority to hire or fire. Salesmen's territories are assigned by the Mason City office, and vacation schedules are established there. All or-

ders are subject to acceptance by the office in Mason City, and credit extensions and collections are handled there, the salesmen having no authority to accept orders or extend credit.

The price of taxpayer's cement products is the delivered price to the customer, the sum of the base price plus the freight plus the package. Accordingly, the products are invoiced f. o. b. destination. Freight is prepaid by the taxpayer, and in no case can the customer purchase cement from taxpayer except at a delivered price nor, since taxpayer has no facilities for loading trucks, can the customer pick up cement at taxpayer's plant. Quotations giving both base and delivered price are sent directly to the customer from the Mason City office. Although the salesmen have no authority to give the customer a quotation, they do carry a rate book from which they regularly compute the delivered price to the customer without a quotation. On the request of one of taxpayer's dealers, quotations for specific projects are sent from Mason City to the contractor. Such a quotation cites the dealer's price (f. o. b. dealer's warehouse) to the contractor.

## II

### Tax Does Not Violate Due Process Clause

■ The imposition of a net-income tax under § 290.03 upon that portion of the taxpayer's net income which is allocated to Minnesota under the three-factor formula of § 290.19 is not unconstitutional as violating the due process clause of U. S. Const. Amend. XIV, or that of Minn. Const. art. 1, § 7. A nondiscriminatory[7] state tax upon the net income[8] of a foreign corporation engaged *solely* in interstate business,

---

[7]See, United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 328, 38 S. Ct. 499, 501, 62 L. ed. 1135, 1141, Ann. Cas. 1918E, 748, 750; Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 87, 88, 68 S. Ct. 1475, 1478, 1479, 92 L. ed. 1832, 1839, 1840; Peck & Co. v. Lowe, 247 U. S. 165, 174, 175, 38 S. Ct. 432, 434, 62 L. ed. 1049, 1052; Atlantic Coast Line R. Co. v. Daughton, 262 U. S. 413, 422, 43 S. Ct. 620, 623, 67 L. ed. 1051, 1060; 1953 Wash. U. L. Q. 233, 255.

[8]See, Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. ed. 445; Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. ed. 165; United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 329, 38 S. Ct. 499, 501, 62 L. ed. 1135, 1141, Ann. Cas. 1918E, 748, 750.

which is fairly apportioned[9] to and measured by that part of the net income which is derived from business done within the state, contravenes neither the due process clause nor the commerce clause, where the incidence or subject of the tax is not the privilege of either engaging in, or continuing to engage in, interstate commerce, but is instead those income-producing activities and transactions which, though indirectly related to interstate commerce,[10] have become separated from the flow of that commerce and have become so localized within the state as to compete with, and enjoy the benefits and advantages of, a local business, and which as localized commerce ought to pay their own way and not place other local business at a competitive disadvantage.[11]

## TAXPAYER'S LOCALIZED ACTIVITIES AND TRANSACTIONS WITHIN STATE SATISFY REQUIREMENTS OF DUE PROCESS

We can only conclude that the taxpayer has sufficient factual connections with localized activities and transactions within the state to comply with the requirements of due process. As already noted, the taxpayer maintains within the state several resident representatives who regularly and systematically solicit orders which are forwarded to the corporation's principal business office in the adjoining state for acceptance or rejection. These representatives, in addition to soliciting orders, entertain customers and furnish them with information, receive and forward their complaints, and furthermore, *contact prospective users of cement (inclusive of architects and building and road contractors) to*

[9]See, Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 256, 58 S. Ct. 546, 549, 82 L. ed. 823, 828.

[10]See, Atlantic Coast Line R. Co. v. Daughton, 262 U. S. 413, 422, 43 S. Ct. 620, 623, 67 L. ed. 1051, 1060; West Publishing Co. v. McColgan, 328 U. S. 823, 66 S. Ct. 1378, 90 L. ed. 1603, affirming 27 Cal. (2d) 705, 166 P. (2d) 861; Cheney Brothers Co. v. Massachusetts, 246 U. S. 147, 155, 38 S. Ct. 295, 297, 62 L. ed. 632, 637.

[11]See, International Harvester Co. v. Dept. of Treasury, 322 U. S. 340, 349, 64 S. Ct. 1019, 1023, 88 L. ed. 1313, 1319; Gwin, White & Prince, Inc. v. Henneford, 305 U. S. 434, 59 S. Ct. 325, 83 L. ed. 272; Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 259, 58 S. Ct. 546, 550, 82 L. ed. 823, 830; 1953 Wash. U. L. Q. 233, 242, 243, 253; 56 Dickinson L. Rev. 107, 109, 110; McGoldrick v. Berwind-White Co. 309 U. S. 33, 60 S. Ct. 388, 84 L. ed. 565, 128 A. L. R. 876.

*induce them to buy cement through and from the taxpayer's estab-
lished local outlets or dealers.*[12] In addition, the taxpayer maintains a
local service office, permits its office manager and representative to
hold himself out as its district representative, and otherwise engages in
the many additional local activities *hereinbefore enumerated in a fac-
tual summary of taxpayer's activities in Minnesota.*

TAXPAYER RECEIVES EXTENSIVE BENEFITS OF STATE GOVERNMENTAL
SERVICES AND ENJOYS THE PROTECTION OF THE STATE COURTS

Clearly, this is not a case where a state reaches beyond its borders
and fastens its tax talons upon an event having no factual connection
with transactions within its borders whereby it is unable to confer any-
thing in return for the exaction.[13] Here instead the taxpayer is present
through its extensive localized activities and enjoys, in return for any
taxes exacted, the opportunities, protection, and benefits of a modern
community serviced by a state government which maintains courts,
police, roads, and other services of distinct advantage to the building
and maintenance of the taxpayer's tremendous sales volume (48 per-
cent of its total sales volume) through business outlets within the state.
It is not amiss to observe that the taxpayer, or its immediate predecessor
under a prior incorporation, has already had occasion to seek the bene-
fit and protection of our courts.

## III

FINAL ISSUE—NOT IN CONTRAVENTION OF COMMERCE CLAUSE

■ The tax imposed under § 290.03 not only complies with the re-
quirements of due process but is also not in contravention of the com-
merce clause since it does not impose a burden upon, or discriminate
against, interstate commerce. Tax enactments violate the commerce
clause when they either profess to regulate interstate commerce, or
affect it so directly as to amount to a regulation, or discriminate

---

[12]See, Norton Co. v. Dept. of Revenue, 340 U. S. 534, 539, 71 S. Ct.
377, 381, 95 L. ed. 517, 521. An analogous situation arose with respect
to the Northwestern Consolidated Milling Company in Cheney Brothers Co.
v. Massachusetts, 246 U. S. 147, 155, 38 S. Ct. 295, 297, 62 L. ed. 632, 637.

[13]See, Hartman, State Taxation of Interstate Commerce, p. 117.

against it so as to place it at a disadvantage with intrastate commerce.[14] In the present case we have a net-income tax, limited and apportioned to the income earned from and within the state, which neither burdens nor discriminates against the free flow of interstate commerce.[15] It is purely a general income tax which is not used as a measure or as a substitute for any other tax. It cannot by dictionary definition, legislative intent, or by operative effect be construed or classified as an excise, franchise, or privilege tax. It is not a tax imposed as a condition precedent to the exercise of the privilege of engaging in interstate commerce. *Failure to pay the tax does not work a forfeiture of any right to continue to engage in interstate commerce. It is collectible only by resort to the ordinary means of collecting taxes.* In this respect it involves no regulation of, or burden upon, interstate commerce.[16]

STATUTORY LANGUAGE PRECLUDES AN INTENT TO IMPOSE AN EXCISE TAX OR PRIVILEGE TAX

■ A comparison of § 290.02 with the section with which we are here directly concerned, namely § 290.03, is enlightening in disclosing the true nature of the tax.[17] An examination of these sections discloses a clear distinction between the excise tax imposed on domestic and foreign corporations for the privilege of transacting business within the state and the income tax imposed under § 290.03. First, the arrangement of the statute is indicative of the legislature's intention to differentiate between these two types of taxes: § 290.02 imposes an excise tax, but § 290.03 imposes purely an income tax. That the *annual tax* imposed by § 290.03 upon the *taxable net income* is not an excise or privilege tax measured by net income, but purely a net-income tax wholly unrelated to the privilege of engaging in interstate commerce, becomes clear when we consider the character of the specifically designated types of taxpayers to which it equally and uniformly applies.

---

[14]See, McGoldrick v. Berwind-White Co. 309 U. S. 33, 60 S. Ct. 388, 84 L. ed. 565.

[15]Altman & Keesling, Allocation of Income in State Taxation, p. 29.

[16]Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. ed. 165.

[17]For convenience in making a comparison, the two sections, §§ 290.02 and 290.03, are set forth in full in footnotes 2 and 3.

Clearly, paragraphs (1), (2), (3), and (4) of § 290.03 must be construed together since they relate to the imposition of the same kind of tax on four different classes of taxpayers, namely, on domestic and foreign corporations engaged exclusively in foreign or interstate commerce under paragraph (1); on resident and nonresident individuals under paragraph (2); on estates of decedents dying domiciled within or without the state under paragraph (3); and on trusts created by resident or nonresident persons or by domestic or foreign corporations under paragraph (4). Since the annual net-income tax imposed on individuals under paragraph (2) cannot by any legal legerdemain be construed as an excise or privilege tax, the same yardstick of meaning must be applied to the tax imposed under paragraph (1) upon foreign corporations engaged exclusively in interstate commerce. A similar comparison of paragraphs (3) and (4) with paragraph (1) corroborates this conclusion.

Secondly, the distinction in the nature of these taxes is further emphasized by the provisions of § 290.04, subd. 1, which establishes that liability for the excise tax—although measured by income—arises on the first day of the taxable year, while liability for the income tax arises concurrently with the receipt or accrual of income during the taxable year.

TAX IS NONDISCRIMINATORY AND SUBJECT TO JUDICIAL REVIEW

The tax is also nondiscriminatory. *It applies equally to all taxpayers, resident or nonresident, and whether they are engaged in either interstate or intrastate commerce. Significantly Minnesota, in dealing with resident and domestic taxpayers located within its borders and doing business partly within and partly without the state, imposes the tax only on that portion of the income allocable to earnings produced within this state.* As applied to nonresident taxpayers engaged in interstate commerce, it is confined to that portion of their income earned from business activities which are fairly apportioned to, and localized within, the state. It is not an arbitrary imposition since the taxpayer has the opportunity of voluntarily preparing and filing his own tax return according to the information which he himself possesses. If any error is thought to occur in the levy, measure, or the amount of the tax as based

on his own return, or upon a return prepared for him by the tax commissioner, he may, like any resident taxpayer, petition the state Board of Tax Appeals for relief and after that he has a further right of appeal to this court.

## TAX IS FAIRLY APPORTIONED TO INTRASTATE NET-INCOME SOURCES AND DOES NOT IMPOSE A MULTIPLE TAX BURDEN ON INTERSTATE COMMERCE

Taxpayer contends that the tax before us is invalid for the reason that it imposes a multiple tax burden upon its interstate business. Although a tax imposed upon gross receipts or other incidents may be invalid for this reason where not fairly apportioned,[18] such a tax is not invalid if it is fairly *apportioned* to the commerce carried on within the taxing state. Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 58 S. Ct. 546, 82 L. ed. 823. Likewise, a tax imposed upon net income, if fairly apportioned to sources derived from within the taxing state, does not contravene the requirement of due process even though the taxpayer may be domiciled in another state.[19] Moreover, as hereinafter shown, such a tax does not violate the commerce clause although the income or a part of the income taxed is derived from interstate commerce.[20] The tax before us now is a tax upon net income and it is fairly apportioned to the net profit derived from taxpayer's business activities carried on in this state. It is therefore not invalid as imposing a multiple burden upon taxpayer's interstate business.

---

[18]Adams Mfg. Co. v. Storen, 304 U. S. 307, 58 S. Ct. 913, 82 L. ed. 1365; Gwin, White & Prince, Inc. v. Henneford, 305 U. S. 434, 59 S. Ct. 325, 83 L. ed. 272; Case of State Freight Tax, 82 U. S. (15 Wall.) 232, 21 L. ed. 146; Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U. S. 157, 74 S. Ct. 396, 98 L. ed. 583; Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 58 S. Ct. 546, 82 L. ed. 823.

[19]Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. ed. 445; Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. ed. 165; New York ex rel. Whitney v. Graves, 299 U. S. 366, 57 S. Ct. 237, 81 L. ed. 285; Altman & Keesling, Allocation of Income in State Taxation, p. 29.

[20]United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. ed. 1135, Ann. Cas. 1918E, 748; Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. ed. 165; Shaffer v.

### Mere Possibility That Iowa May Attempt to Tax Entire Income of Taxpayer Does Not Invalidate Minnesota Tax

We have, however, the suggestion, although there is no support for it in the record, that Iowa, as the domiciliary state, may attempt to impose a tax upon taxpayer's entire net income wherever earned. Most states, including Minnesota, however, permit their domiciliaries to apportion the net income derived from sources within the state and thereby excuse payment of a tax on net income derived from out-of-state sources.[21] Where, however, a domiciliary state does not voluntarily permit the apportionment of the total net income of the taxpayer, the United States Supreme Court has, by its treatment of a potential double tax burden in another situation, indicated that it may require the domiciliary state to permit apportionment. In the analogous situation the court, in dealing with an ad valorem tax, has held that a state other than the corporate domicile may impose a tax on the taxpayer's instrumentalities utilized in interstate commerce. Where, however, a tax is imposed by two or more states on an apportionment basis, the court declared that the *domiciliary* state is precluded from taxing all of taxpayer's property.[22] If the domiciliary state is required to apportion in the case of an ad valorem tax, there is no reason why it may not be required to do so with respect to a tax imposed upon taxpayer's net income.

### A Net-income Tax is Not a Burden on Interstate Commerce

■ Clearly, a net-income tax places no burden upon interstate commerce. *The tax is levied after the interstate commerce transactions localized within the state have been completed, and after all expenses are paid and losses adjusted, and after the taxpayer, as the recipient of the remaining net income, is free to use it as he chooses. Thus the tax is exacted only after the stream of income-producing inter-*

---

Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. ed. 445; Altman & Keesling, Allocation of Income in State Taxation, p. 29.

[21]Altman & Keesling, Allocation of Income in State Taxation, p. 31; M. S. A. 290.19.

[22]Standard Oil Co. v. Peck, 342 U. S. 382, 72 S. Ct. 309, 96 L. ed. 427; Braniff Airways v. Nebraska Board, 347 U. S. 590, 74 S. Ct. 757, 98 L. ed. 967.

*state commerce has ceased to flow.* See, Peck & Co. v. Lowe, 247 U. S. 165, 175, 38 S. Ct. 432, 434, 62 L. ed. 1049, 1052. No longer may it be doubted that a tax may be levied on net income derived wholly from operations in interstate commerce, although a tax on that commerce is forbidden.[23]

In McGoldrick v. Berwind-White Co. 309 U. S. 33, 46, 60 S. Ct. 388, 392, 84 L. ed. 565, 570, 128 A. L. R. 876, 880, the court said:

"* * * Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. A tax may be levied on net income wholly derived from interstate commerce. Non-discriminatory taxation of the instrumentalities of interstate commerce is not prohibited. The like taxation of property, shipped interstate, before its movement begins, or after it ends, is not a forbidden regulation."

### SPECTOR MOTOR SERVICE DECISION DISTINGUISHED

■ Taxpayer contends, however, that since the rendition of the decision in Spector Motor Service v. O'Connor, 340 U. S. 602, 71 S. Ct. 508, 95 L. ed. 573, no tax, even though it be fairly apportioned and nondiscriminatory, may be levied on the net income of a foreign corporation engaged *exclusively* in interstate commerce. It is the position of the taxpayer that such a tax may be levied only in those cases where the foreign corporation is engaged in both intrastate and interstate commerce. We cannot agree with this interpretation of the Spector case. The Spector case did not turn on the fact that the foreign corporation was *solely* engaged in interstate commerce. The nub of the decision is

---

[23]United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. ed. 1135, Ann. Cas. 1918E, 748; Shaffer v. Carter, 252 U. S. 37, 57, 40 S. Ct. 221, 227, 64 L. ed. 445, 459; see, McGoldrick v. Berwind-White Co. 309 U. S. 33, 47, 60 S. Ct. 388, 392, 84 L. ed. 565, 570, 128 A. L. R. 876, 880; Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 656, 62 S. Ct. 857, 862, 86 L. ed. 1090, 1097; West Publishing Co. v. McColgan, 328 U. S. 823, 66 S. Ct. 1378, 90 L. ed. 1603, affirming 27 Cal. (2d) 705, 166 P. (2d) 861.

that a net-income tax, even though it be fairly apportioned and non-discriminatory, may not be imposed on the *privilege* of engaging in business that is exclusively interstate in character. The Connecticut Supreme Court construed its statute as involving a direct imposition of the tax upon the *franchise or privilege* of engaging in interstate commerce. The United States Supreme Court clearly accepted this construction as controlling its interpretation. This is not unusual. In Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 84, 85, 68 S. Ct. 1475, 1477, 92 L. ed. 1832, 1838, the court expressly declared that it was bound by the construction of a state statute by the state court. Although the United States Supreme Court has on occasion looked behind a state court's holding that a tax is not a burden upon interstate commerce, *it has not done so where the state court has by its construction admitted or declared the tax to be a burden upon that commerce.* Since the incidence of the tax in the Spector case was the *privilege* itself of engaging in interstate commerce, it fell before the commerce clause. The court carefully distinguished those cases in which, as an exception to the general rule that no tax may be levied upon the *privilege* of engaging in interstate commerce, a state, where a taxpayer is engaged in both intrastate and interstate commerce, is permitted to tax the *privilege* of carrying on intrastate business and, within reasonable limits, is permitted to apply a fair proportion of the tax to the taxpayer's business which is done within the state. The court refused to extend the application of these hybrid cases to a taxpayer, like Spector, who is engaged exclusively in interstate commerce. The majority expressly stated that (340 U. S. 610, 71 S. Ct. 513, 95 L. ed. 579) "the federal *privilege* of carrying on exclusively interstate commerce" must be kept "free from state taxation." (Italics supplied.)

The court, in the Spector case, carefully pointed out that whether a state may validly make interstate commerce pay its own way depends first of all upon the constitutional channel through which it attempts to do so, citing Freeman v. Hewit, 329 U. S. 249, 67 S. Ct. 274, 91 L. ed. 265, and McLeod v. Dilworth Co. 322 U. S. 327, 64 S. Ct. 1023, 88 L. ed. 1304. Apparently in an effort to prevent misunderstanding of the rule of its holding, and for the purpose of indicating that a constitutional channel is available to the states, the court said (340 U. S.

609, 71 S. Ct. 512, 95 L. ed. 578):

"* * * *The State is not precluded from imposing taxes upon other activities or aspects of this business* which, unlike the *privilege* of doing interstate business, are subject· to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will be reasonably related to the powers of the State and nondiscriminatory." (Italics supplied.)

It follows that the Spector decision makes it reasonably clear that there is a constitutional channel for making interstate commerce pay its own way and that this channel gives the state a right to impose taxes upon other activities and aspects of the interstate commerce business which, unlike the *privilege* of doing interstate business, are subject to the sovereign power of the state despite the fact that such taxes may be derived out of income from interstate business.

### Alpha Portland Cement Co. Decision Distinguished

The Spector decision, in support of its holding that a state may not tax the *privilege* of carrying on a business that is exclusively interstate in character, cites Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203, 45 S. Ct. 477, 69 L. ed. 916, wherein an attempt was made to impose an excise tax upon the *privilege* of engaging in a business solely interstate in character. The Alpha case does nothing more than emphasize the rule that taxes upon the *privilege* of doing interstate business violate the commerce clause.

### Cheney Brothers Co. v. Massachusetts Supports Validity of Tax Herein

In Cheney Brothers Co. v. Massachusetts, 246 U. S. 147, 38 S. Ct. 295, 62 L. ed. 632 (cited in the Alpha case), involving consideration of the validity of an excise tax imposed upon seven foreign corporations, each differently situated, we have a good illustration of the principle that a state may impose a valid tax if the proper constitutional channel is selected. One of the foreign corporations involved therein was the Northwestern Consolidated Milling Company, which, like the instant taxpayer, had localized its business within the state. In uphold-

ing the validity of the tax upon this corporation, the court said (246 U. S. 155, 38 S. Ct. 297, 62 L. ed. 637):

"This company was incorporated under the laws of Minnesota, operates flour mills there, and sells the flour to wholesale dealers throughout the country. It has an office in Massachusetts where it employs several salesmen for the purpose of inducing local tradesmen to carry and deal in its flour. These salesmen solicit and take orders from retail dealers and turn the same over to the nearest wholesale dealer, who fills the order and is paid by the retailer. Thus the salesman, although not in the employ of the wholesaler, is selling flour for him. *Of course this is a domestic business,—inducing one local merchant to buy a particular class of goods from another,*—and may be taxed by the State, regardless of the motive with which it is conducted." (Italics supplied.)

In the case at bar we also have salesmen who call upon the users of cement to induce them to give their business to the local dealers who handle the taxpayer's product.

WEST PUBLISHING CO. V. McCOLGAN SIMILARLY DISTINGUISHES SPECTOR AND ALPHA CASES AND SUPPORTS VALIDITY OF INCOME TAX ON FOREIGN CORPORATIONS WHERE NET INCOME IS THE SUBJECT AS WELL AS THE MEASURE OF THE TAX

That our interpretation of the Spector and the Alpha cases is correct is further illustrated by a comparatively recent decision involving facts substantially similar to those of the case at bar, namely, West Publishing Co. v. McColgan, 328 U. S. 823, 66 S. Ct. 1378, 90 L. ed. 1603, affirming 27 Cal. (2d) 705, 166 P. (2d) 861. The West case has been well summarized as follows:

"* * * this company was in the law book publishing business, a Minnesota corporation. The company shipped books and other publications into California pursuant to orders taken by its salesmen who devoted their full time to their jobs in California. These employees had space in lawyers' offices in exchange for the use of books stored there. The California employees were authorized to and did receive payments on orders, collected deliquent [sic] accounts and made adjustments on

complaints of customers.

"The State of California cognizant of the fact that a state may not exact a tax for the *privilege* of doing an exclusively interstate business, imposed an income tax on those corporations not subject to its franchise tax. It made net income the subject as well as the measure of its *Corporation Income Tax*. It limited the measure of the tax to income from California sources which was understood to mean income from sources of books and periodicals delivered in California. The California Supreme Court sustained the assessment holding that 'a tax on net income from interstate commerce as distinguished from a tax on the privilege of engaging in interstate commerce does not conflict with the commerce clause.' The U. S. Supreme Court unanimously affirmed this decision by a *per curiam* opinion." (Italics supplied.)[24]

### COMPARISON OF WEST WITH SPECTOR AND ALPHA DECISIONS

In the Spector and Alpha cases, both involving foreign corporations engaged exclusively in interstate commerce, the tax was held invalid because it was imposed directly on the *privilege* of doing that business. In the West case, however, the tax was valid because it was a tax on the net income from business localized within the state and not a tax on the *privilege* of engaging in interstate commerce. In connection with the West case, it is significant to note that the California statutory scheme of taxation is similar to that of Minnesota. See Appendix at the end of this opinion.[25]

In the light of the intent, as well as the carefully restricted impact, of our state statutes, as applied to taxpayer's extensive localized activities within Minnesota, we can only conclude that the net-income tax imposed under § 290.03, pursuant to the decisions of the United States Supreme Court, does not contravene the due process clauses of either the Federal or the State Constitutions and does not conflict with the commerce clause.

The trial court is affirmed.

Affirmed.

---

[24]Kraus, *The Implications of the Spector Motor Service Case,* 56 Dickinson L. Rev. 107, 112.

[25]The relatively recent Pennsylvania Supreme Court decision in Com-

APPENDIX TO OPINION

In connection with the West decision, it is interesting to note that California's statutory scheme of taxation under its Corporation Income Tax Act of 1937 and Bank and Corporation Franchise Tax Act is very similar to Minnesota's. The California statute provides:

"There shall be levied, collected and paid for each taxable year, a tax * * * upon the net income of every corporation derived from sources within this State * * *. Income from sources within this State includes income from tangible or intangible property located or having a situs in this State and income from any activities carried on in this State, regardless of whether carried on in intrastate, interstate or foreign commerce." Calif. Stat. 1937, c. 765, § 3.

The act excepts from its provision any income included in the measure of the corporate excise tax. The California Supreme Court's determination that the tax as valid was affirmed by the Supreme Court of the United States. West Publishing Co. v. McColgan, 27 Cal. (2d) 705, 166 P. (2d) 861, affirmed, 328 U. S. 823, 66 S. Ct. 1378, 90 L. ed. 1603.

On the other hand, Spector Motor Service v. O'Connor, 340 U. S. 602, 71 S. Ct. 508, 95 L. ed. 573, was concerned with the construction of a statute which, on its face, professed to impose an excise tax for the privilege of transacting business within the state. The Connecticut Corporation Business Tax Act of 1935 imposed, with certain exceptions not involved here, on every corporation carrying on business within the state—

monwealth v. Eastman Kodak Co. 385 Pa. 607, 124 A. (2d) 100, is neither controlling nor in point. In that case the incidence of the tax was held to be the franchise or privilege of doing interstate commerce. The Kodak Company did not maintain a service office within Pennsylvania for the convenience of its customers and salesmen. Furthermore, the Kodak Company did not have a local manager; did not contact prospective users of its products to persuade them to patronize its local dealers; and did not, in any material degree, carry on the systematic local activities characteristic of the taxpayer herein. In the instant case the taxpayer is present in Minnesota through its extensively localized activities and these activities—unlike those in the Pennsylvania case—provide the necessary incidence for the tax.

"* * * a tax or excise upon its franchise for the privilege of carrying on or doing business within the state, such tax to be measured by the entire net income * * * received by such corporation * * * from business transacted within the state * * *." Conn. Cum. Supp. to Gen. Stat. 1935, § 418c.

NELSON, JUSTICE (dissenting).

I respectfully dissent from the conclusions reached in the majority opinion on defendant's tax liability.

It is undisputed that the taxpayer is an Iowa corporation domiciled in that state; that its business is the manufacture and sale of cement and cement products; and that it maintains its home and principal business offices, as well as its manufacturing plant, at Mason City, Iowa.

Taxpayer has never qualified under M. S. A. 303.03 as a foreign corporation authorized to do business in the State of Minnesota, nor does the record indicate that the state has ever demanded such qualification or compliance with that statute. There is no indication from the record that this state could demand such compliance nor that it could deny defendant the right to freely engage in interstate commerce within its borders.

Taxpayer admits that, while engaged in interstate commerce in the manufacture and sale of its products, it has over a period of approximately 30 years found a market for a large amount of its products in Minnesota, but alleges that it has operated in the same manner in Iowa, Nebraska, North Dakota, South Dakota, and Wisconsin. Taxpayer has never filed income tax returns in this state. The state commissioner of taxation determined to claim part of the income earned by taxpayer as taxable by Minnesota, and upon taxpayer's refusal to file returns, he prepared the returns in his own office on the basis of information available to him and caused them to be filed.

The commissioner used the so-called three-factor formula described in § 290.19 in determining the portion of defendant's overall net income which was to be allocated to Minnesota and subjected to the income taxes imposed by this state. The three factors specified pursuant to the statutory formula were: (1) The ratio of the taxpayer's sales made in

Minnesota during the year to its total sales for the year wherever made; (2) the ratio of the taxpayer's total tangible property used in the business that year to the total tangible property wherever situated; and (3) the ratio of the taxpayer's total payroll in Minnesota for the year to its total payroll for its entire business that year.

The figures arrived at in the commissioner's returns were demanded from taxpayer under § 290.03 and Minnesota Income Tax Regulations, Reg. 2003(1), as applicable to income tax on corporations.[26] The total alleged tax deficiency, if collectible, is not in dispute.

During the relevant business years taxpayer maintained only one office in this state. That office, located in Minneapolis, was occupied under a lease negotiated and paid for from the home office at Mason City, Iowa. Taxpayer did not own or occupy a warehouse or storage or manufacturing plant in this state. It owned no real estate here, and its only personal property in this state was its salesmen's automobiles, its office furniture, and a small amount of supplies and goodwill advertising material. The Minneapolis office was a sales office where taxpayer's salesmen met customers. The office consisted of three small rooms and contained three desks, two filing cabinets, a typewriter, and some chairs. All personal property including salesmen's automobiles and office supplies except postage stamps were requisitioned from the home office and were bought and paid for there.

During the years involved five salesmen were employed in this state. Two operated from the Minneapolis office and the other salesmen operated directly out of their homes at different points in the state. The only other employee was a secretary who worked at the Minneapolis office. All these employees were hired by supervisory personnel at taxpayer's home office. At no time did any of the above employees possess or exercise authority to hire or fire other employees, nor did the

---

[26]Reg. 2003(1) of Minnesota Income Tax Regulations 1955 (income tax on corporations) provides:

"All corporations, domestic or foreign, whose business within this State during any taxable year consists exclusively of interstate commerce, are subject to a tax imposed directly upon their taxable net income under the provisions of M. S. A. 290.03(1). This provision requires the imposition of a tax on the net income from interstate commerce or foreign commerce assignable to Minnesota."

employees have authority to purchase supplies other than postage stamps. Taxpayer did not maintain a bank account in this state, and all salaries paid Minnesota employees were fixed by the sales manager at Mason City and paid directly from the home office. Territories for each salesman were allocated at the home office, and no salesman had authority to reallocate. Customer entertainment expenses incurred in this state were paid directly from the home office. Employees were compensated by salary only, without provision for commissions.

The sales procedure was one of solicitation and taking orders. The salesmen received the buyer's order which they forwarded to the home office. There the order was examined before acceptance. Buyer's credit was subject to home office approval. If the order was accepted, the buyer was sent an acknowledgment from the home office and the cement product shipped directly to the buyer by rail, f. o. b. Mason City, Iowa. All merchandise was invoiced and shipped from Mason City directly to the buyer. All price quotations and changes thereof were sent directly to the customer from the home office. Prices were quoted at millsite rate at Mason City, Iowa, plus, for the buyer's convenience, the freight to the buyer's place of business. The salesmen were required to transmit all orders received to the home office daily. All contracts were executed at the Mason City office and then sent directly to the customer. Credit extensions and collections were handled only at the home office. The salesmen were without authority to accept or reject a customer's order or to approve his credit. The buyer's claim for loss or damage was handled only by the home office. Any claims presented to the salesmen were transmitted to the home office for disposition. The authority of the salesmen was limited to the solicitation of sales and promotion of goodwill, and for all practical purposes they were devoid of any managerial responsibility. There is testimony that one salesman had at times held himself out as defendant's district manager. The record indicates doubt whether this was with or without taxpayer's knowledge.

Based upon taxpayer's activities as disclosed by the record connected with its operations in Minnesota, the trial court found that those activities consisted of a regular and systematic course of solicitation of orders for the sale of merchandise, such orders being subject to ap-

proval, acceptance, filling, and delivery by the taxpayer from its home office at Mason City, Iowa. The court found that a predecessor of defendant had resorted to the courts of Minnesota to enforce its contract on one occasion. The record does not disclose that the present defendant has at any time resorted to the courts of this state to enforce its contracts. The trial court in its memorandum, which was made a part of the decision in this case, stated *"Obviously this tax is a tax upon the net income of a foreign corporation whose business is exclusively that of foreign commerce or interstate commerce or both."* (Italics supplied.) The court below also characterized taxpayer's activities in this state as an integral part of its interstate activities, with all revenues received by it from customers' sales in Minnesota resulting from its operation in interstate commerce.

The trial court, nevertheless, by its conclusions of law, determined in effect that taxpayer's activities in Minnesota were sufficient in the local field to render it subject to the court's jurisdiction and moreover subject to taxation based upon apportionment under the formula applied to determine taxpayer's net income from its Minnesota activities. Based upon the findings made, it concluded that the tax as assessed, and if collected, does not contravene the due process clause of either U. S. Const. Amend. XIV, or Minn. Const. art. 1, § 7, nor does the tax as assessed conflict with or violate the commerce clause, U. S. Const. art. I, § 8, clause 3.[27]

Even though the position of the taxpayer herein that mere solicitation does not constitute sufficient doing of business to subject defendant corporation to suit is somewhat persuasive, we take no issue with the majority opinion on its statement relative to service of process or the question whether the courts of Minnesota acquire jurisdiction of taxpayer.

---

[27]U. S. Const. art. I, § 8, clause 3, provides:

"The Congress shall have power:

\* \* \* \* \*

"To regulate commerce with foreign nations, and among the several states, and with the Indian tribes;"

U. S. Const. Amend. XIV, § 1, provides:

"\* \* \* No state shall make or enforce any law which shall abridge the

Difficulties are encountered because of the natural inclination to equate amenability to service of process to jurisdiction to tax. Such, however, is not the case. Amenability to suit and imposition of the taxing power are distinct problems. While the service of process may well subject the taxpayer corporation here involved to jurisdiction in personam, there remains nevertheless the question of jurisdiction of the thing as distinguished from the jurisdiction of the person, even though in International Shoe Co. v. Washington, 326 U. S. 310, 321, 66 S. Ct. 154, 161, 90 L. ed. 95, 105, the United States Supreme Court stated:

"* * * The activities which establish its 'presence' subject it alike to taxation by the state and to suit to recover the tax."

We consider the important questions on this appeal to be (1) whether M. S. A. 290.03 is in conflict with and violative of the due process clauses of U. S. Const. Amend. XIV, and Minn. Const. art. 1, § 7, insofar as it seeks to impose a tax on income of a foreign corporation which arises wholly out of sales and activities carried on and consummated exclusively in interstate commerce and, except for continuous and systematic solicitation on the part of its salesmen and their activities within the state, otherwise conducted exclusively without and beyond the borders of the State of Minnesota, and (2) whether § 290.03 is in conflict with and violative of the commerce clause, U. S. Const. art. I, § 8, clause 3, insofar as it seeks to impose a tax on the net income of taxpayer, a foreign corporation, whose business activities in this state were an integral part of its interstate activities and whose business consists exclusively of interstate commerce.

Deciding that the taxpayer, a foreign corporation, can be sued in Minnesota, does not decide that it is subject to being taxed in this state. The question of the application of the taxing power must be decided upon the merits. See, Kendall v. Orange Judd Co. 118 Minn. 1, 136 N.

---

privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, * * *."

Minn. Const. art. 1, § 7, provides in part:

"No person shall * * * be deprived of life, liberty or property without due process of law."

W. 291; 18 Fletcher, Cyclopedia of Corporations (Perm. ed.) § 8712. The operating incidence within the taxing state of the foreign corporation is controlling as to liability to taxation or other burdens which may be imposed upon interstate commerce measured by the multiple-burden test.

The claimed activities of the taxpayer's soliciting salesmen allegedly give rise to the tax issue here. Jurisdiction in personam, not offensive to traditional notions of fair play, allows the trial court to proceed to decide the issues arising in the case on its merits.

Section 290.03, upon which the state relies for the collection of the taxes assessed against the taxpayer,[28] in fact provides for an annual tax without designating the type of tax. The tax is measured by the net income according to the apportionment formula provided for in § 290.19. See, Western Auto Supply Co. v. Commr. of Taxation, 245 Minn. 346, 71 N. W. (2d) 797. Although the tax is measured by net income, and the commissioner of taxation and the taxpayer corporation do not contend that it is anything but an income tax, it has elements of an excise tax.

An excise tax is synonymous with a privilege tax. American Airways v. Wallace (M. D. Tenn.) 57 F. (2d) 877. The mere fact that the tax is measured by a percentage of net income does not prevent it from being an excise or privilege tax. Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. ed. 165.

An excise tax is an indirect charge for the privilege of following an occupation or trade, or carrying on a business; while an income tax is a direct tax imposed upon income and is as directly imposed as is a tax on land. United States v. Philadelphia, B. & W. R. Co. (E. D. Pa.) 262 F. 188. The constitutionality of the tax depends upon the substance of the statute and the real character of the tax, rather than upon the name given the tax by the legislature.

A tax measured by the income or earnings of a corporation may be in fact an excise or franchise tax, although the statute imposing the same does not so denominate it. Security Sav. & Commercial Bank v. District of Columbia, 51 App. D. C. 316, 279 F. 185.

---

[28]See footnote 26.

However, determining that a tax is an excise tax on the privilege of doing business is not to decide the case. Practical operation, not descriptive labels, of the challenged tax statute must and will determine validity of application. Interstate Oil Pipe Line Co. v. Stone, 337 U. S. 662, 69 S. Ct. 1264, 93 L. ed. 1613. Mr. Justice Reed in a footnote in his dissent in that case noted (337 U. S. 677, 69 S. Ct. 1272, 93 L. ed. 1626):

"Since we perceive no difference for the purposes of this case between franchise, privilege, and excise taxes, insofar as they are exacted for the privilege of doing or the doing of interstate business, we have treated them as identical as far as their validity under the commerce clause is concerned."[29]

In one of the opinions appearing in connection with the litigation of Spector Motor Service v. O'Connor (2 Cir.) 181 F. (2d) 150, 156, the court reviewed its function concerning state taxation of interstate commerce as follows:

"We should not be understood as claiming that the constitutionality of a tax should depend upon the name the legislature has given it. * * * Hence we do not suggest that the tax is automatically constitutional merely because it is measured by net income, and a net income tax has been held to be an indirect burden. *Rather we should look to the actual operation of the tax and decide whether it discriminates against interstate commerce, whether it is unduly burdensome to interstate commerce, whether it attempts to reach activities outside the borders of the state, and whether it is susceptible of being repeated by any other state. If these questions are answered in the negative, if the tax is a fair and a just attempt to make all commerce, intrastate and interstate, bear its share of the costs of government, then the tax should be held valid.*" (Italics supplied.)

See, also, Spector Motor Service v. Walsh (2 Cir.) 139 F. (2d) 809, including dissent by Judge Learned Hand.

---

[29]As previously stated: "This court has repeatedly adjudged that * * * the judiciary will not regard mere forms, but will look through forms to the substance of things." Western Union Tel. Co. v. Kansas, 216 U. S. 1, 27, 30 S. Ct. 190, 197, 54 L. ed. 355, 366.

A state's area of taxation is limited by its geographical borders. Generally, where interstate commerce is involved, the general business situs of taxpayer being wholly in another state, property or the existence of business activities sufficient in the local field to be designated or classified as intrastate commerce must be found within the taxing state, affording an appropriate channel through which to tax, before that state may levy a tax which even indirectly affects the business of a foreign corporation. Where taxpayer is engaged both in interstate and in intrastate commerce, a state may tax the privilege of carrying on intrastate business and, within reasonable limits, in order to arrive at the measure of business within the taxing state, may compute the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the state and, as a basis for arriving at its apportionment, include in its calculations both interstate as well as intrastate business. It may be said that it is in substance the rule that the interstate commerce clause prohibits the state which is not the domiciliary one from taxing in any manner the act of engaging in interstate commerce within its limits and also from taxing property engaged in interstate commerce, when it may legally do so, at a higher rate than any other property. It would appear to be generally understood that every form of taxation directly imposed upon interstate or foreign commerce is prohibited to the states beyond all controversy and that the only question which arises in this class of cases is how far a state tax may incidentally affect the free flow of foreign or interstate commerce without falling within the inhibition implied from the exclusive power of Congress, to which the Constitution commits the regulation of commerce with foreign nations and among the several states. It would be a simple matter if the exact limits of the power of a state to levy taxes which incidentally affect interstate commerce were capable of precise definition. Decisions must be made depending upon the facts in each case since almost every tax imposed by a state in some degree affects interstate commerce. Always, the important question is whether interstate commerce is affected to an unconstitutional extent and whether the degree to which it is affected constitutes an undue burden upon such commerce.

In Alpha Portland Cement Co. v. Commonwealth, 248 Mass. 156,

142 N. E. 762, it was held by the state court that a state may lawfully impose an excise tax on a foreign corporation engaged exclusively in interstate commerce provided the tax is measured by net income from the business transacted in the taxing state. It would appear that the Massachusetts court in the foregoing case and in Alpha Portland Cement Co. v. Commonwealth, 244 Mass. 530, 139 N. E. 158, based its decision upon the theory of remuneration for local protection and benefits without reference to the distinction drawn in some cases between local taxation of foreign corporations engaged exclusively in interstate commerce and those engaged in both interstate and intrastate commerce.

The United States Supreme Court, however, in Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203, 45 S. Ct. 477, 69 L. ed. 916, reversed the decisions of the Massachusetts court in both cases, holding that the imposition of the tax was an unconstitutional burden on interstate commerce. The United States Supreme Court in that decision in effect denied altogether the power of the state to impose a tax in any form on a corporation engaged exclusively in an interstate business. As that court is the final arbiter of questions of the character involved, it must appear somewhat obvious that, until that decision is overruled or limited by the United States Supreme Court itself, it has thereby settled the question, not only of the power of a state to impose an excise tax, or even a net-income tax if the tax be denominated as such, on foreign corporations engaged exclusively in interstate commerce measured by income from business within the state, but of the power to impose a tax in any form on such corporations.[30]

It was laid down as a general rule in Adams Mfg. Co. v. Storen, 304 U. S. 307, 58 S. Ct. 913, 82 L. ed. 1365, that a state taxing statute which discriminates against interstate commerce is invalid. We think it well settled under the constitutional provisions involved here that interstate or foreign commerce may not be taxed by a state and that a state may not impose upon foreign corporations a tax for the privilege of engaging in such commerce except where the local incidence of the operations in the taxing state lays a basis for classifying such local operations as intrastate activity,[31] or in essence as intrastate commerce.

---

[30]See, Annotation, 44 A. L. R. 1228 to 1231.

[31]Also, see, Annotations, 105 A. L. R. 11 to 67, and 117 A. L. R. 444 to 446.

Upon a state of facts similar to those of the instant case, the United States Supreme Court in Cheney Brothers Co. v. Massachusetts, 246 U. S. 147, 153, 38 S. Ct. 295, 296, 62 L. ed. 632, 636, said:

"We do not perceive anything in this that can be regarded as a local business as distinguished from interstate commerce. The maintenance of the Boston office and the display therein of a supply of samples are in furtherance of the· company's interstate business and have no other purpose. Like the employment of the salesmen, they are among the means by which that business is carried on and share its immunity from state taxation. * * * *We think the tax on this company was essentially a tax on doing an interstate business and therefore repugnant to the commerce clause."* (Italics supplied.)

The Supreme Court of the United States in holding that the attempted imposition of the income tax was void and repugnant to the commerce clause of the United States Constitution in the Alpha Portland Cement Co. case, relying on its earlier decision in the Cheney Brothers Co. case, said (268 U. S. 219, 45 S. Ct. 481, 69 L. ed. 924):

"The excise challenged by plaintiff in error is not materially different from the one declared unconstitutional in Cheney Brothers Co. v. Massachusetts, and cannot be enforced against a foreign corporation which does nothing but interstate business within the State. The introduction of an extremely complicated method for calculating the amount of the exaction does not change its nature or mitigate the burden."

Thus, the United States Supreme Court struck down the attempted imposition of an *income tax* as unconstitutional when applied to a foreign corporation doing only interstate business in the taxing state, where no local incidence follows from the operational activities of a foreign corporation giving rise to intrastate business or commerce, holding, in that situation, that a state may not tax the interstate business of a corporation of another state.[32] The principles of the latter cases were followed in Spector Motor Service v. O'Connor, 340 U. S. 602, 71 S. Ct. 508, 95 L. ed. 573.

---

[32]Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. ed. 355.

The issue before the United States Supreme Court in that case had been rather distinctly stated by Judge Learned Hand in his dissenting opinion in Spector Motor Service v. Walsh (2 Cir.) 139 F. (2d) 809, 822, where he said:

"* * * we have before us in the barest possible form the effort of a state to levy an excise directly upon the privilege of carrying on an activity which is neither derived from the state, nor within its power to forbid."

In Norton Co. v. Dept. of Revenue, 340 U. S. 534, 537, 71 S. Ct. 377, 380, 95 L. ed. 517, 520, the United States Supreme Court said:

"Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that *the State of the buyer has no local grip on the seller.*" (Italics supplied.)

In Memphis Steam Laundry Cleaner v. Stone, 342 U. S. 389, 72 S. Ct. 424, 96 L. ed. 436, Mr. Chief Justice Vinson speaking for the court made it clear *that a tax, the operational incidence of which caused it to fall upon solicitation of interstate business, was a tax on interstate commerce itself.* The court then stated why the tax would not be permitted to conflict with the constitutional mandate on the regulation of commerce beween the states (342 U. S. 395, 72 S. Ct. 428, 96 L. ed. 441):

"* * * The Commerce Clause created the nationwide area of free trade essential to this country's economic welfare by removing state lines as impediments to intercourse between the states. The tax imposed in this case made the Mississippi state line into a local obstruction to the flow of interstate commerce that cannot stand under the Commerce Clause."

Other cases that bear with considerable force upon the interstate commerce questions involved here are Ozark Pipe Line Corp. v. Monier, 266 U. S. 555, 45 S. Ct. 184, 69 L. ed. 439; Interstate Oil Pipe Line Co. v. Stone, 337 U. S. 662, 69 S. Ct. 1264, 93 L. ed. 1613; Joseph v. Carter & Weekes Stevedoring Co. 330 U. S. 422, 67 S. Ct.

815, 91 L. ed. 993; McLeod v. Dilworth Co. 322 U. S. 327, 64 S. Ct. 1023, 88 L. ed. 1304; Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U. S. 157, 74 S. Ct. 396, 98 L. ed. 583; Freeman v. Hewit, 329 U. S. 249, 67 S. Ct. 274, 91 L. ed. 265; Adams Mfg. Co. v. Storen, *supra*; Gwin, White & Prince, Inc. v. Henneford, 305 U. S. 434, 59 S. Ct. 325, 83 L. ed. 272; Nippert v. Richmond, 327 U. S. 416, 66 S. Ct. 586, 90 L. ed. 760.[33]

The commerce clause of the Federal Constitution controls the respective powers of the state and Federal governments in connection with interstate commerce. The commerce clause is not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the states, but it is a commitment to it by the Constitution to regulate commerce with foreign nations and among the several states. It also creates an area of trade free from interference by the states, and none is permitted to take any action which may be deemed to impede the free flow of trade between states. We think the record clearly indicates that taxpayer is exclusively engaged in interstate commerce, subject only to a determination of the question whether the local incidence of its operations in Minnesota provide a basis for the assessment of the tax which the state seeks to impose and that under the decisions we have just referred to, to the extent that the taxpayer's activities are exclusively in interstate commerce, there will be immunity from state taxation.

The governing principles, which were early stated in McCulloch v. Maryland, 17 U. S. (4 Wheat.) 316, 4 L. ed. 579; Brown v. Maryland, 25 U. S. (12 Wheat.) 419, 6 L. ed. 678, and repeated in Robbins v. Shelby County Taxing Dist. 120 U. S. 489, 7 S. Ct. 592, 30 L. ed. 694, indicate that the taxing power of the states has for the most part been closely scrutinized in the commerce field, while Congress, which has the power to lessen or take away immunity in the interstate commerce

---

[33]Since the decision in the Spector Motor Service case, several of the highest state courts have ruled upon local taxes laid on exclusively interstate business declaring them void. Mississippi River Fuel Corp. v. Hoffman, 4 Ill. (2d) 468, 123 N. E. (2d) 503; Gross Income Tax Division v. Surface Combustion Corp. 232 Ind. 100, 111 N. E. (2d) 50; Roy Stone Transfer Corp. v. Messner, 377 Pa. 234, 103 A. (2d) 700.

field in state taxation, has been slow to interfere, except in a limited way and in limited and prescribed fields with the added burden light and controllable, where to do so would impede the free flow of trade between the states. A burden on interstate commerce is no less objectionable because it is imposed by a state under the taxing power rather than under the state police power. Freeman v. Hewit, *supra*. Interstate commerce should bear its fair share of the tax load. Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 58 S. Ct. 546, 82 L. ed. 823. However, to suggest that a tax on interstate commerce is valid because a similar tax is placed on local trade is to disregard the commerce clause. Freeman v. Hewit, *supra*. So long as the commerce clause is recognized as preventing any interference with interstate trade, there will be discussion concerning the conflicting claims of the state taxing power and the commerce clause. See, Hartman, *State Taxation of Interstate Commerce: An Appraisal and Suggested Approach,* 1953 Wash. U. L. Q. 233; Kraus, *The Implications of the Spector Motor Service Case,* 56 Dickinson L. Rev. 107; see, also, list of articles in Spector Motor Service v. O'Connor (2 Cir.) 181 F. (2d) 150, 154.[34]

As has been so often stated, not all burdens upon commerce, but only undue or discriminatory ones, are forbidden. Western Live Stock v. Bureau of Revenue, *supra*; McGoldrick v. Berwind-White Co. 309 U. S. 33, 60 S. Ct. 388, 84 L. ed. 565. *Although interstate commerce must pay its way, a state cannot put a barrier around its borders to bar trade from other states and thus run contrary to the power in Congress to regulate commerce among the states.*

In Miller Brothers Co. v. Maryland, 347 U. S. 340, 74 S. Ct. 535, 98 L. ed. 744, there was no duty on an out-of-state merchant to collect and remit a tax on the use, storage, or consumption of articles, even though the vendor's advertising with papers and radio stations of its home state reached the people in the taxing state; its occasional sales

---

[34]Mr. Justice Black, concurring in Northwest Airlines v. Minnesota, 322 U. S. 292, 302, 64 S. Ct. 950, 955, 88 L. ed. 1283, 1290, said: "These problems, it seems to me, call for Congressional investigation, consideration, and action. The Constitution gives that branch of government the power to regulate commerce among the states, and until it acts I think we should enter the field with extreme caution."

circulars mailed to all former customers included customers in the taxing state; and some of the purchases were delivered in the taxing state by common carrier and some by the vendor's own trucks. There was not sufficient local incidence to sustain the taxing power.

In Norton Co. v. Dept. of Revenue, *supra,* the United States Supreme Court sustained a tax on gross receipts from all sales to persons in Illinois, except on orders sent directly by the customers to the head office and shipped directly to the customers from the head office. *The exception made is significant because of the similarity of facts in the case at hand where orders were sent to Mason City, Iowa, for acceptance and shipment of goods f. o. b. Mason City.* The local incidents were a branch office which made local sales at retail from a limited inventory carried there, received orders and forwarded them to the head office for action there, and acted as an intermediary to reduce freight charges on goods shipped from the head office. The case is distinguishable because of the existence of a substantial retail sales outlet, not found in the instant case.

In Nippert v. Richmond, *supra,* a license tax was invalidated. The tax had been imposed upon a solicitor who had been in the city for five days soliciting orders for out-of-state confirmation and shipment into the state. Notwithstanding that only casual solicitation was involved, the case is persuasive for the proposition that mere solicitation is not sufficient to uphold the application of the tax. However, because the court questions the conclusiveness of the local-incidence test, use of the case may not be well taken. The court states that local incidence will be weighed along with the danger of multiple-burden taxation. The court also states that it would be possible to find local incidence in any case (327 U. S. 423, 66 S. Ct. 589, 90 L. ed. 764):

"* * * All interstate commerce takes place within the confines of the States and necessarily involves 'incidents' occurring within each State through which it passes or with which it is connected in fact."

Included in this statement is the recognition that interstate commerce must necessarily be carried on within the states (327 U. S. 423, 66 S. Ct. 589, 90 L. ed. 764):

"It has not yet been decided that every state tax bearing upon or

affecting commerce becomes valid, if only some conceivably or conveniently separable 'local incident' may be found and made the focus of the tax. This is not to say that the presence of so-called local incidents is irrelevant. On the contrary the absence of any connection in fact between the commerce and the state would be sufficient in itself for striking down the tax on due process grounds alone; and even substantial connections, in an economic sense, have been held inadequate to support the local tax."

Thus, the United States Supreme Court gives consideration to the operating incidence of the tax. No case has ever actually departed from the basic principle that interstate commerce cannot be taxed by the states in the absence of local or intrastate business.

In McLeod v. Dilworth Co. *supra,* the United States Supreme Court made it clear *that a tax cannot be collected by the buyer's state on orders solicited in one state, accepted in another, and shipped at the purchaser's risk. The mere solicitation of orders is not sufficient local incidence to support the tax.*

In Cheney Brothers Co. v. Massachusetts, *supra,* from which we have quoted, it is clearly established that a foreign corporation is not subject to taxation when it merely maintains salesmen in the taxing state who have no power to confirm orders or collect accounts, or adjust complaints. The taxpayer was a Connecticut corporation engaged in manufacturing and selling silk fabrics. It maintained a selling office in Boston with one office salesman and four other salesmen, who, like those employed by the defendant company in Minnesota, solicited and took orders subject to approval by the home office in Connecticut, and the corporation shipped goods directly to the purchasers. No stock of goods was kept in the Boston office other than samples used in soliciting and taking orders. The Boston office retained copies and records of orders taken but did no bookkeeping and made no collections. The salesmen and the office rent were paid directly from the home office, and other expenses of the Boston office were paid from a small account kept in Boston for that purpose. The corporation did no other business in the state.

In Alpha Portland Cement Co. v. Massachusetts, *supra,* heretofore

alluded to, which follows the Cheney case, we have a New Jersey cement company maintaining an office in Boston, Massachusetts, *in the charge of a district sales manager* where the corporation's correspondence and other activities in connection with the solicitation of orders could be carried on. Orders received at the Boston office were transmitted to the principal office of the corporation in Pennsylvania for acceptance. All goods and invoices were sent directly to the customer. Payments were usually made to the Pennsylvania office, but, unlike the instant case, occasionally salesmen accepted payments. No samples or other merchandise were kept in Massachusetts. Its only property in that state was its office furniture and fixtures. Salaries and office rent were paid from the home office. Unlike the instant case, an incidental-expense bank account was maintained. The activities of the Alpha Portland Cement Co. in Massachusetts were more extensive than those of the defendant company in Minnesota; yet the United States Supreme Court struck down the tax as invalid.

Memphis Steam Laundry Cleaner v. Stone, *supra,* stated the function of the courts (342 U. S. 392, 72 S. Ct. 426, 96 L. ed. 439):

*"The State may determine for itself the operating incidence of its tax. But it is for this Court to determine whether the tax, as construed by the highest court of the State, is or is not 'a tax on interstate commerce.' "* (Italics supplied.)

Whether or not solicitation of interstate business may have some semblance of being a local incident, the United States Supreme Court has not permitted state taxation of this integral part of interstate commerce. Memphis Steam Laundry Cleaner v. Stone, *supra,* and cases cited therein.

The state places a great deal of reliance on International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95, in support of its position. That case is chiefly important for its holding rendering the interstate corporation amenable to suit in the state courts on the basis of a finding of certain local incidents in addition to solicitation. The imposition of the state unemployment compensation tax cannot be questioned. The commerce clause authorizes Congress to regulate interstate commerce. Congress by statute, now coded as 26 USCA,

§ 3305(a), has authorized the levying of the state unemployment compensation tax. Thus, since Congress has the power to authorize such a tax, there is no basis for attacking the tax on commerce-clause grounds. The International Shoe Co. case is distinguishable because there is no similar Congressional authorization for the levying of the Minnesota tax.

The state in its argument makes a point of admitting that a tax on the privilege of engaging in interstate commerce would be unconstitutional. However, the state goes on to argue that application of an income tax under the three-factor formula may be legally and constitutionally applied, even though there is no intrastate commerce or local incidents amounting thereto. Clearly this is contrary to the admitted rule that a state cannot tax the privilege of engaging in interstate commerce. The tax here involved imposes a direct tax upon interstate commerce. *If the taxpayer is engaged exclusively in interstate commerce, then its imposition is violative of the commerce clause and unconstitutional. It must find intrastate commerce activity to support its imposition or it is void as a direct tax. The state definitely argues the competitive privileges and advantages taxpayer has enjoyed over the years selling its cement products to Minnesota dealers. Unless taxpayer is actually engaged in intrastate commerce as such, in some form, and not engaged exclusively in interstate commerce, the state's contention without that local incidence as a base amounts to arguing for the imposition of the tax based upon the privilege, which taxpayer constitutionally enjoys free from state-tax intervention, of transacting its interstate business in the field of commerce between the states.*

The present views of the United States Supreme Court are clearly set out in Spector Motor Service v. O'Connor, 340 U. S. 602, 71 S. Ct. 508, 95 L. ed. 573. The court stated that interstate commerce cannot be taxed by the states in the absence of local or intrastate business. The dictum, suggesting otherwise, in Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 62 S. Ct. 857, 86 L. ed. 1090, was repudiated. The court stated (340 U. S. 608, 71 S. Ct. 512, 95 L. ed. 578):

"* * * The incidence of the tax provides the answer. The courts of Connecticut have held that the tax before us attaches solely to the franchise of petitioner to do interstate business. The State is not precluded from imposing taxes upon other activities or aspects of this busi-

ness which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will be reasonably related to the powers of the State and nondiscriminatory.

"This Court heretofore has struck down, under the Commerce Clause, state taxes upon the privilege of carrying on a business that was *exclusively* interstate in character. *The constitutional infirmity of such a tax persists no matter how fairly it is apportioned to business done within the state.* Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203 (measured by percentages of 'corporate excess' and net income); Ozark Pipe Line Corp. v. Monier, 266 U. S. 555 (measured by percentage of capital stock and surplus). See Interstate Pipe Line Co. v. Stone, 337 U. S. 662, 669, *et seq.* (dissenting opinion which discusses the issue on the assumption that the activities were in interstate commerce); Joseph v. Carter & Weekes Co., 330 U. S. 422; Freeman v. Hewit, *supra.*" (Italics supplied.)

Although the case has been criticized as applying mechanical standards in determining what is the dividing point between interstate and intrastate commerce, there is no alternative so long as there can be no tax on the privilege of doing interstate commerce. The determination of what is interstate commerce must necessarily involve the analysis and distinguishing of facts. Freeman v. Hewit, *supra.*

The dissent in the Spector case not inappropriately states that there is (340 U. S. 612, 71 S. Ct. 513, 95 L. ed. 580) "apparent need for clearing up the tangled underbrush of past cases." To reconcile all of the cases involving state taxation of interstate commerce would be a nearly impossible task. As stated before, there is comfort in recognizing that the courts consider each case on the basis of its own facts. See, Annotation, 44 A. L. R. 1228.

The state relies on a number of cases that unquestionably stand for the proposition that there can be no tax on the privilege of doing interstate business. United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. ed. 1135, held that a net-income tax was an indirect burden, thus not unconstitutionally imposed, noting that a

gross-receipts tax is a direct burden. The case is distinguishable because the taxing state was the domicile of the interstate corporation. It maintained executive offices and an extensive manufacturing plant in the state of its domicile, the taxing state. No one would question the power of the state of Iowa to impose a net-income tax on taxpayer, domiciled there, yet engaged in interstate commerce, which would be the analogous situation.

The power of Iowa to impose a tax on taxpayer's net income, although not to be decided here, suggests the danger of multiple taxation which is grounds for invalidation of the Minnesota tax. Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 58 S. Ct. 546, 82 L. ed. 823. Taxpayer has its executive offices and manufacturing plant in Iowa. *Under the multiple-burdens test, such state taxes on interstate business are invalid as are susceptible of being imposed with equal right by other states, so that interstate commerce is required to bear a heavier burden of taxation than is intrastate commerce.*

In both Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 68 S. Ct. 1475, 92 L. ed. 1832, and Interstate Oil Pipe Line Co. v. Stone, 337 U. S. 662, 69 S. Ct. 1264, 93 L. ed. 1613, a divided court upheld the imposition of a tax. The United States Supreme Court relied to some extent on the interpretation and application of the state statutory provision of "doing business" by the Mississippi Supreme Court. There was acceptance of the interpretation that the incidence of the tax was on local activities. The cases are distinguishable on the basis of finding local incidents of operation. Apparently, the United States Supreme Court has considered the pipeline cases to be best understood when taken together, even though the test is the same. In Memphis Natural Gas Co. v. Stone the court said (335 U. S. 89, 68 S. Ct. 1479, 92 L. ed. 1840):

"* * * This Court has drawn the distinction in the field of pipe line taxation between state statutes on the privilege of doing business where only interstate business was done and those upon appropriate local incidents."

Local incidence of operation is controlling. Maintenance, repair, and manning of a pipeline was sufficient for the conclusion that the tax

was on intrastate business.

Butler Brothers v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991, involved an interstate corporation which maintained one of its wholesale distributing houses in the taxing state. Each of its houses maintains stocks of goods, serves a separate territory, has its own sales force, handles its own sales and all solicitation, credit, and collection arrangements in connection therewith, and keeps its own books of account. Although the court did not apply the incidence of operation rule, it is clear that the court thought there was no question but that intrastate activity was involved. There was much more than mere solicitation in the Butler Brothers case, and thus the case is distinguishable.

West Publishing Co. v. McColgan, 328 U. S. 823, 66 S. Ct. 1378, 90 L. ed. 1603, affirming 27 Cal. (2d) 705, 166 P. (2d) 861, can be distinguished from the instant case because more than solicitation was involved. The salesmen were authorized to receive payments on orders taken by them, to collect delinquent accounts, and to make adjustments in case of complaints by customers. Although these activities are closely allied with solicitation, they are nonetheless activities in addition to the activities of mere solicitation. The West Publishing Co. case may be further distinguished from the instant case because therein the taxing statute, unlike § 290.03 as applied here under the apportionment formula, was limited in application to income from sources of books and periodicals delivered in the state seeking to impose the tax.

The Butler Brothers and West Publishing Co. cases, following doctrine set out in United States Glue Co. v. Town of Oak Creek, *supra,* apparently proceed on the theory that a net-income tax, even on an exclusively interstate business, is an indirect burden on commerce and thus valid. To so reason is to ignore the approach of determining whether there are local incidents to uphold a finding of intrastate business. To use the direct-indirect distinction is to a large extent to characterize a result. In discussing the various approaches used by the courts, one text writer stated:

"Prior to 1938, when the Court was declaring that interstate commerce was exempt from local taxation, a tax was saved by declaring that the effect of the tax on interstate commerce was 'indirect,' which is a fashion in judicial speech tantamount to the conclusion that the taxed

event was not considered interstate commerce. A tax levied on the actual movement of interstate commerce, or on the privilege of engaging in, or on gross receipts from that commerce, or on the means and instrumentalities used in interstate commerce (property taxes permitted) was struck down as having a 'direct' effect or being a 'direct' burden upon the commerce, which was another way of saying that there is no local power to tax interstate commerce." Hartman, *State Taxation of Interstate Commerce: An Appraisal and Suggested Approach*, 1953 Wash. U. L. Q. 233, 241.

The local-incidents test, with a line drawn at solicitation in cases involving distribution of merchandise and goods, places emphasis on an analysis of the facts. The defendant company was careful in its operations in Minnesota. None of its activities, if we follow the Cheney, Alpha, Spector, and Memphis Steam Laundry Cleaner cases, as well as other numerous pronouncements by the United States Supreme Court, can be construed to extend beyond solicitation, nor the business thus conducted be other than exclusively interstate commerce. Nothing appears from the contentions and the arguments presented, oral or written, exhibiting extensive research by both sides, which renders the line of decisions beginning with the Cheney case inapplicable here. The doctrine therein announced has been adhered to and reaffirmed by the highest court since the advent of the Cheney case.

Notwithstanding that solicitation is an integral part of interstate business, there is alternative reasoning which could be applied to the cases already discussed. It is submitted that commerce-clause grounds are better taken, however, due process under Amend. XIV requires some connection between the taxing authority and the taxpayer. A recent pronouncement by the United States Supreme Court in Miller Brothers Co. v. Maryland, 347 U. S. 340, 344, 74 S. Ct. 535, 538, 98 L. ed. 744, 748, states:

"The question here is whether this vendor, by its acts or course of dealing, has subjected itself to the taxing power of Maryland or whether it has afforded that State a jurisdiction or power to create this collector's liability. * * * Our decisions are not always clear as to the grounds on which a tax is supported, * * *; nor are all of our pro-

nouncements during the experimental period of this type of taxation consistent or reconcilable. * * * *But the course of decisions does reflect at least consistent adherence to one time-honored concept: that due process requires some definite link, some minimum connection, between a state and the person, property, or transaction it seeks to tax.*

"* * * Certain activities or transactions carried on within a state, such as the use and sale of property, may give jurisdiction to tax whomsoever engages therein, and the use of highways may subject the use to certain types of taxation. These cases overlap with those in which incorporation by a state or permission to do business there forms the basis for proportionate taxation of a company, including its franchise, capital, income and property." (Italics supplied.)

The overriding principle evident in this case and others involving state taxing powers is that operating incidence of the tax is of primary consideration. Depending on the facts of each case, state taxing powers may or may not be exercised. As suggested, sales or use may be sufficient basis for the tax. The state of domicile, or the state in which a corporation has permission to do business, may when the required circumstances exist impose taxes. Even the least of these, *permission to do business,* may be the subject of this tax. *Mere solicitation, however continuous, has not been held sufficient to uphold a tax such as the one sought to be imposed here in any of the cases presented or any cases discovered through independent research.*

Similar taxes have been invalidated at levels below the United States Supreme Court. In State v. American Can Co. 117 Colo. 312, 186 P. (2d) 779, a tax on the entire net income derived from business transacted within that state was invalidly applied to a corporation of another state engaged in interstate business. The facts, similar to the facts in the instant case, included solicitation by men whose orders must be accepted at one of its foreign offices for goods manufactured outside the state and delivered to points outside of the state for shipment to state customers in the taxing state. In contrast the Colorado court, a short time before the decision in the American Can Co. case, had decided Cruse v. Stayput Clamp & Coupling Co. 113 Colo. 254, 156 P. (2d) 397. The latter case involved a net-income tax on a corporation domiciled in Colorado, the taxing state. The corporation maintained its

executive offices and manufacturing plant in Colorado. The court upheld the imposition of the tax. It is clear from these two cases that the domiciliary state may impose its net-income tax following the line of cases coming down from United States Glue Co. v. Town of Oak Creek, *supra*. However, the state attempting to apply its net-income tax to the interstate business of a corporation not domiciled in the taxing state must find local incidents of intrastate-commerce quality sufficient to uphold the tax.

In Matter of United Air Lines v. Joseph, 282 App. Div. 48, 121 N. Y. S. (2d) 692, there is similar invalidation of a gross-receipts tax, the question being whether there were sufficient local incidents to uphold the tax. The court in that opinion stated (282 App. Div. 54, 121 N. Y. S. [2d] 698): "The Western Live Stock case is misunderstood if one fails to note in reading the last two paragraphs quoted that in order to apportion a privilege tax on interstate commerce there must first be some local or intrastate commerce. Mr. Justice Stone so states, the authorities cited by him and omitted from the quotation, so held expressly, or involved such factual support for their holding." It may be remembered that the Western Live Stock case is frequently cited as authority for a nondiscriminatory tax on interstate commerce. Nevertheless, as recognized by the New York court, there must be connection with the taxing state so as to support a finding of intrastate commerce. A case decided at the same time as the United Air Lines case, and relying thereon for similar finding of an invalid application of the tax, is Matter of United Piece Dye Works v. Joseph, 282 App. Div. 60, 121 N. Y. S. (2d) 683, wherein the court held that the mere selling of merchandise or services in a state other than one in which seller was located did not subject seller to tax jurisdiction in such other state.

For further support, see Farwell, Ozmun, Kirk & Co. v. Wallace, 45 N. D. 173, 177 N. W. 103, where a tax was held to be invalidly levied directly on the proceeds in the taxing state arising out of interstate commerce of a corporation not engaged in doing intrastate business.

A most recent pronouncement made by a state court, based upon a state of facts similar in many respects to that which presently confronts us, is to be found in Commonwealth v. Eastman Kodak Co. 385 Pa.

607, 124 A. (2d) 100. In that case the judgment of the lower court that a foreign manufacturer of photographic equipment, which had no tangible property in Pennsylvania except salesmen's automobiles and no office or place of business in Pennsylvania and was not registered to do business in the state and made no contracts therein, was not subject to the corporation income tax was affirmed by the Pennsylvania Supreme Court. The court held that the imposition of the tax on the corporation constituted a violation of the interstate commerce clause because it attempted to tax local business activities which were an integral part of the interstate flow of commerce that could not be separated from it. The persuasiveness of the Pennsylvania decision cannot be ignored. The Pennsylvania act under consideration openly states in the face of the commerce clause "A rule shall not be deemed to be inapplicable merely because all the tangible property or the expenditures of a corporation for wages, salaries, commissions or other compensation, or the gross receipts of the corporation, are found to be situated, incurred or received without the Commonwealth." 72 Purdon's Penn. Stat. Ann. (Perm. ed.) § 3420n-2. The Pennsylvania court characterizes this statement of its statute as indicating the true nature of the tax. The Minnesota act in the instant case does not expressly state that it attempts to tax on the basis of outstate factors, thus the cases might be distinguished on the basis of the acts; however, as recognized by the recent Pennsylvania decision, relying upon cases cited from the Pennsylvania Supreme Court and the United States Supreme Court, the substance and not the form will control, i. e., the nature of a tax depends upon its incidence, not upon its label. The Pennsylvania court reached the conclusion that in the absence of incidence on local operation which was not an integral part of interstate commerce the tax was invalidly imposed and that their Corporation Income Tax Law of 1951 in its application to the defendant therein was a violation of the interstate commerce clause and therefore unconstitutional.

The only marked dissimilarity in the facts in the latter case and the case at bar is that in the Pennsylvania case the defendant maintained no local office in the state from which its three resident salesmen operated, one of whom performed all of his services in Pennsylvania, and the fact that the Eastman Kodak Co. employed, besides its resident

salesmen, 11 technical representatives who resided in Pennsylvania and who demonstrated to dealers and other users of photographic products the proper method to be employed in using defendant's products, four of whom confined their services within the state, the others performing services within the state and other states. Its tangible property in the state consisted of 10 automobiles, valued at $13,569. The comparison as to tangibles may be made by referring to the statement of facts in the instant case where taxpayer owned five automobiles and a small amount of office furniture in a three-room office, requisitioned, arranged for, and financed through the home office. In Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203, 45 S. Ct. 477, 69 L. ed. 916, petitioner corporation maintained an office in the taxing state in charge of a district sales manager. In the Pennsylvania case the taxing authorities sought to levy what purported to be a net-income tax based upon the operation of a three-fold formula not unlike what was done in the case at bar. The Pennsylvania court in discussing the manner of application of the three-fold formula to the facts of the case said (385 Pa. 615, 124 A. [2d] 103):

"Notwithstanding the fact that the Act seeks to impose what it calls a property tax, it is clear that the tax, *at least as far as the present defendant is concerned, is an excise tax for the privilege of doing business in Pennsylvania.* Cf. Roy Stone Transfer Corp. v. Messner, 377 Pa. 234, 103 A. (2d) 700, supra. The formula which the Commonwealth applies to this defendant makes crystal clear, if it were not otherwise so, that this tax is not a property tax on the local property of defendant, namely, ten automobiles or on the income from local activities as such— *it is an attempted excise tax on defendant's interstate commerce business out of which there were no local activities which could be considered as not an integral or realistically inseparable part of interstate commerce.*" (Italics supplied.)

We cite for purposes of illustration and comparison Matter of Gulf Oil Corp. v. Joseph, 307 N. Y. 342, 121 N. E. (2d) 360. An examination of this case indicates that the primary problem was the application of the apportionment formula. The court in that case accepted without question the finding that the taxpayer carried on substantial

local intracity and intrastate sales activities as well as an interstate business.

Since we have a tax on sales, made from a foreign corporation's (taxpayer's) business establishment and manufacturing plant outside of the state and shipped on orders solicited in the state to state customers by rail (common carrier), f. o. b. Mason City, Iowa, pursuant to prices quoted to customer at millsite rate, plus freight, and since the taxpayer's activities in the state form an integral part of its interstate activities, with all revenues received by it from customer sales in the state resulting from its operations in interstate commerce, the tax assessed in the instant case is a tax upon the net income of a corporation whose business is exclusively that of foreign commerce or interstate commerce, or both, and therefore in contravention of the commerce clause, U. S. Const. art. I, § 8, clause 3.

The state taxing statute, M. S. A. 290.03, for the reasons stated, is in its application to taxpayer, here, upon the facts submitted, a violation of the interstate commerce clause and therefore unconstitutional.

Stress has been laid, in the majority opinion, on McGoldrick v. Berwind-White Co. *supra,* as authority for the claim that upon the factual situation presented in the instant case a tax may be levied on taxpayer's net income wholly derived from interstate commerce. In that regard reference is made especially to the statements of the court in the McGoldrick case that (309 U. S. 47, 60 S. Ct. 392, 84 L. ed. 570) "A tax may be levied on net income wholly derived from interstate commerce. Non-discriminatory taxation of the instrumentalities of interstate commerce is not prohibited." These statements derive from the definite factual situation existing in that case and from the cases cited by the court in support of the conclusions reached regarding the application of the tax situation there presented. The taxpayer sold coal to New York public utility and steamship companies, being a Pennsylvania corporation engaged in mining coal in the latter state. The tax involved was a 2-percent tax upon receipts from every sale of tangible personal property sold within the city of New York. It was a tax laid upon every purchaser within the state, of goods sold for consumption, regardless of whether they had been transported in interstate commerce. Mr. Justice Stone, speaking for the majority of the court in that case, however,

recognized the limitations imposed by the commerce clause and made it clear that certain types of taxation, by the states, are ruled out through the immunity afforded by the commerce clause. That statement is as follows (309 U. S. 48, 60 S. Ct. 393, 84 L. ed. 571):

"Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, or tax interstate transportation or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey. Each imposes a burden which intrastate commerce does not bear, and merely because interstate commerce is being done places it at a disadvantage in comparison with intrastate business or property in circumstances such that if the asserted power to tax were sustained, the states would be left free to exert it to the detriment of the national commerce."

It was held that the 2-percent tax laid upon every purchaser within the state, as applied to the Berwind-White Company, was without the possibility of such consequences. In that case taxpayer had asked the state courts to rule that the tax act did not apply to coal transactions which was the selling of coal to New York consumers for plants and steamships, particularly because the enabling statute expressly prohibits the city from imposing a tax upon (309 U. S. 58, 60 S. Ct. 399, 84 L. ed. 578) "any transaction originating and/or consummated outside the territorial limits of the City." This question had been left unanswered by the state court which had wholly rested its decision on constitutional grounds. Upon a reversal and remand of the case, the United States Supreme Court in its opinion said (309 U. S. 59, 60 S. Ct. 399, 84 L. ed. 578):

"Upon the remand of this cause for further proceedings not inconsistent with this decision, the state court will be free to decide the state question, and the remand will be without prejudice to the further presentation to this Court of any federal question remaining undecided here, if the state court shall determine that the taxing statute is applicable."

In Freeman v. Hewit reference was made to the Berwind-White case as follows (329 U. S. 257, 67 S. Ct. 279, 91 L. ed. 274):

"It has been urged that the force of the decision in the Adams case has been sapped by McGoldrick v. Berwind-White Co. * * *. The decision in McGoldrick v. Berwind-White was found not to impinge upon 'the rationale of the Adams Manufacturing Co. case,' and the tax was sustained because it was 'conditioned upon a local activity, delivery of goods within the state upon their purchase for consumption.' "

Mr. Chief Justice Hughes, dissenting in the McGoldrick case, again made clear the principle which has been maintained throughout the years that the states cannot lay a direct tax upon interstate commerce. I am unable to agree that the McGoldrick case is controlling on the issues before the court in the case at bar. The case before us is one of interstate commerce in its most obvious form. We have here the imposition of a burden which intrastate commerce does not bear, and merely because interstate commerce is being done, places it at a disadvantage in comparison with intrastate business or property in circumstances such that if the asserted power to tax were sustained, the states would be left free to exert it to the detriment of the national commerce.

The tax will not be saved if it directly burdens interstate commerce. Adams Mfg. Co. v. Storen, 304 U. S. 307, 58 S. Ct. 913, 82 L. ed. 1365.

Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state. Robbins v. Shelby County Taxing Dist. 120 U. S. 489, 7 S. Ct. 592, 30 L. ed. 694; Cooney v. Mountain States T. & T. Co. 294 U. S. 384, 55 S. Ct. 477, 79 L. ed. 934.

It has been said heretofore that a desirable, just, and general scheme for raising revenues might well be reached through the cooperation of the Federal government and the states so as to avoid the differentiations which beset the application of the commerce clause and at the same time protect both state and national governments in the difficult field of general taxation. The consideration of such a policy belongs in the legislative field and is for the Congress and not for the courts. So far

Congress has not seen fit to lift or set aside the duty of maintaining the immunity of the interstate commerce clause as the Constitution prescribes. We cannot lightly brush aside the statement made by Mr. Chief Justice Hughes in his dissent in the McGoldrick case (309 U. S. 69, 60 S. Ct. 404, 84 L. ed. 583):

"* * * That immunity still remains an essential buttress of the Union; and a free national market, so far as it can be preserved without violence to state power over the subjects within state jurisdiction, is not less now than heretofore a vital concern of the national economy."

If the immunity afforded by the interstate-commerce clause applies in the instant case as contemplated by the Federal Constitution, then the within tax has been imposed, no matter by what name it is designated, without authority on the part of the state to do so.

I think the judgment entered against defendant taxpayer in the court below should be reversed.

FRANK T. GALLAGHER, JUSTICE (dissenting).

In the instant case the trial court found that the defendant corporation's "activities in this state were an integral part of its interstate activities, and all revenue received by it from customers in Minnesota resulted from its operations in interstate commerce."

In its memorandum made a part of the decision the court said: "Obviously this tax is a tax upon the net income of a foreign corporation whose business is exclusively that of foreign commerce or interstate commerce or both." There was evidence to sustain such a finding and statement.

The majority appear to take the position, however, that the business which defendant did in Minnesota is large enough that it has become in effect a local business. It seems to me that the fact that the shipments into this state are extensive cannot change the nature of the business from that of interstate commerce, as found by the trial court, to intrastate commerce and thus form the basis of a finding of local activities upon which to sustain this tax.

In determining the constitutionality of a state tax on a foreign corporation's net income, it is necessary to distinguish those situations where the corporation is carrying on both intrastate or local business and inter-

state commerce in the taxing state from those situations where the corporation does only interstate business and all of its activities in the taxing state are therefore an integral part of interstate commerce.

From the holding in Spector Motor Service v. O'Connor, 340 U. S. 602, 71 S. Ct. 508, 95 L. ed. 573, a state tax, if reasonably measured, would be valid where the foreign corporation is engaged in both interstate and intrastate commerce in the taxing state but would be void as violating the commerce clause where such a corporation does purely an interstate business and all of its activities in the taxing state are an integral part of interstate commerce. Here we have a situation where it is undisputed from the court's findings that the activities of the defendant corporation in Minnesota are an integral part of its interstate activities; where all its revenue from Minnesota customers resulted from its operations in interstate commerce; and where, according to the court's memorandum, the tax is on the net income from business exclusively that of interstate commerce.

In Cheney Brothers Co. v. Massachusetts, 246 U. S. 147, 38 S. Ct. 295, 62 L. ed. 632, and Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203, 45 S. Ct. 477, 69 L. ed. 916, decided prior to the Spector case, the United States Supreme Court held invalid a Massachusetts tax on the net income of foreign corporations which were engaged only in interstate commerce in that state. As I see it, the Spector case reaffirmed the principle laid down in the Alpha and Cheney cases that a state cannot tax the net income produced by a corporation engaged solely in interstate commerce.

In view of the trial court's findings in the instant case and the holdings in the Spector, Alpha, and Cheney cases, I cannot agree with the majority that the attempted imposition of the tax here can be sustained. It seems to me that both the facts and taxing statutes involved in the Alpha case bear a close resemblance to the one before us. In that case the State of Massachusetts attempted to impose a 2 1/2-percent tax on that part of the company's net income derived from the business carried on in that state, not less than a tax of .05 percent on the corporation's net worth allocable to Massachusetts. In holding the tax invalid under the commerce clause, the United States Supreme Court said (268 U. S. 217, 45 S. Ct. 480, 69 L. ed. 923): "Here also the excise was

demanded on account of interstate business. A new method for measuring the tax had been prescribed, but that cannot save the exaction. Any such excise burdens interstate commerce and is therefore invalid without regard to measure or amount."

It appears to me that McGoldrick v. Berwind-White Co. 309 U. S. 33, 60 S. Ct. 388, 84 L. ed. 565, is distinguishable from the case at bar. That was a proceeding to review a determination of the comptroller of New York City assessing a New York City retail sales tax deficiency against a Pennsylvania corporation. The question for consideration there was whether the New York City tax laid upon sales of goods for consumption as applied to the company infringed the commerce clause of the Federal Constitution. As I see it, that case involved only a tax on sales of goods for consumption imposed by New York City where the merchandise was to be used and is not the same situation as here.

West Publishing Co. v. McColgan, 328 U. S. 823, 66 S. Ct. 1378, 90 L. ed. 1603, affirming 27 Cal. (2d) 705, 166 P. (2d) 861, also is distinguishable. While the facts in that case are not set forth in the per curiam opinion of the United States Supreme Court, the California Supreme Court based its decision upon the finding that there were local activities. In that case the West Publishing Company maintained a stock of merchandise within the State of California. Its salesmen had authority to make and did make adjustments and collect delinquent accounts. With reference to its local activities the California Supreme Court had this to say (27 Cal. [2d] 707, 166 P. [2d] 862):

"* * * During this time it had four regularly employed solicitors in this state who devoted their entire time to plaintiff's business. Its California employees were authorized to receive payments on orders taken by them, to collect delinquent accounts, and to make adjustments in case of complaints by customers. The employees were given space in the offices of attorneys in return for the use of plaintiff's books stored in such offices."

No such local incidents are present here as the defendant company kept no stock of merchandise in Minnesota. All orders were sent directly to the foreign office and all orders were approved and collections and adjustments made out of that office. Rather it appears to me that de-

fendant here has operated along the methods found in the Alpha and Cheney cases where the attempted tax was invalidated because of lack of local activities.

In conclusion, it is my opinion, under the record here, that the activities of the defendant company in Minnesota were an integral part of its interstate commerce; that its Minnesota revenues resulted from its operation in interstate commerce; and that the attempted tax is on the net income of a business exclusively engaged in interstate commerce and therefore cannot stand.

For the reasons set forth I respectfully concur in the dissent of Mr. Justice Nelson.